[Civ. No. 5316.   Fourth Dist.   May 15, 1956.]

W. B. CAMP AND SONS, INC. (a Corporation) et al., Respondents, v. TURNER STEEL ERECTION COMPANY (a Corporation) et al., Appellants.

Conron, Heard & James and Wayne M. Hamilton for Appellants.

Mack, Bianco, King & Eyherabide and Robert E. King for Respondents.

CONLEY, J. pro tem.*—The plaintiffs were granted judgment against the defendants for $3,064.40, the net fire loss resulting from the destruction and damage of burlap patterns used in baling cotton at their gin. The defendant, Harold Thomas Turner, individually and doing business under the name and style of Turner Steel Erection Company, had frequently done welding work for W. B. Camp and Sons, Inc., a California corporation, and Frank Jeppi, doing business as Calolina Farms Gin and Kern Cottonseed Acid Delinting Company. On the occasion in question, he sent his welding truck with two of his employees, Woods and Edwards, to the gin premises, where Edwards was to weld "T-shaped" strap iron strips on numerous open-ended 50 gallon oil drums for the purpose of permitting the hanging of buckets thereon, thus making them part of the fire protection system in the gin's enlarged bale yard. There is no question but that the defendant was an independent contractor and that through his employees, he chose the place where he was to carry on the welding work. Upon arrival at the gin, Mr. Woods stopped the welding truck within 25 to 40 feet of the bales of burlap patterns, and after instructing Edwards to proceed with the work, he went into one of the buildings to install machinery for the plaintiffs.

From about 8 o'clock until around 11:30 in the morning, when the fire broke out, Edwards carried on his welding operations. The drums upon which the work was done were scattered about the area, some of them near the bales of burlap patterns and some farther away. Woods had instructed him to roll these drums to a position near the back of the welding truck so that he could do the work on them there. The leads on the welding machine were at least 100

---

*Assigned by Chairman of Judicial Council.

feet long, and no one testified that the workman did not vary the position where he worked on the drums. At any event, it is plaintiffs' theory, upheld by the court's findings, that, through defendants' negligence, a spark from the welding equipment started the fire.

There is only one serious question on the appeal—whether there is substantial evidence to support the findings that defendant was negligent and that such negligence was the proximate cause of the fire.

In reviewing the record, we shall apply the time-honored rules that all of the evidence, including reasonable inferences, will be viewed in the light most favorable to the respondents, that all intendments are in favor of the judgment, and that we cannot reweigh the testimony. (*Gates* v. *McKinnon,* 18 Cal.2d 179, 180 [114 P.2d 576]; *Berniker* v. *Berniker,* 30 Cal.2d 439, 444 [182 P.2d 557]; *Rudolph* v. *Tubbs,* 46 Cal.2d 55, 56 [291 P.2d 913]; *Gute* v. *Halstead,* 75 Cal.App.2d 369, 370 [170 P.2d 1016]; *Davidson* v. *American Liquid Gas Corp.,* 32 Cal.App.2d 382, 390 [89 P.2d 1103].)

In dealing with the question whether there is substantial evidence that the fire started from a spark thrown off as the result of the application of the stinger of the welding apparatus, it should be borne in mind that inferences have been liberally relied upon by our courts in these circumstances. The insidious nature of fire and the stealthy incidence of destructive blazes make this a virtual necessity. Numerous apt illustrations of the willingness of our courts to base a finding of proximate cause as to the origin of a fire on inference are furnished by the well considered opinion in *Kennedy* v. *Minarets & Western Ry. Co.,* 90 Cal.App. 563 [266 P. 353], including the following excerpt quoted from page 576 thereof:

"In *Hudspeth* v. *St. Louis & S. F. Ry. Co.,* 172 Mo.App. 579 [155 S.W. 868], in an action involving damages occasioned by sparks from a railroad engine where a barn situate some distance from a railroad track was burned, the court, in speaking of the proof required, held as follows: 'There was no direct proof that defendant's engine, which passed a short time before the fire was discovered, actually emitted sparks or fire, nor any positive testimony that such sparks, if emitted, could, on the day in question, have been blown the distance to plaintiff's hay and remained hot enough to ignite it. The

evidence to make out liability on the part of the defendant was, as is usual in these cases, purely circumstantial. Nevertheless, the probable origin of the fire may be shown by circumstantial evidence; provided the circumstances relied upon are consistent and tend, in a substantial way, to support the claim of plaintiff, and make it probable, and justify a reasonable inference that the fire was caused by sparks from defendant's engine.' '' (See also *Rudolph* v. *Tubbs, supra,* 46 Cal.2d 55, 57, 58; *Dibble* v. *San Joaquin Light & Power Co.,* 47 Cal.App. 112, 115 [190 P. 198]; *Viera* v. *Atchison, T. & S. F. Ry. Co.,* 10 Cal.App. 267, 268-269 [101 P. 690]; *Paiva* v. *California Door Co.,* 75 Cal.App 323 [242 P. 887]; *Young* v. *San Joaquin L. & P. Corp.,* 83 Cal.App. 585, 592 [257 P. 152]; *Reuter* v. *San Pedro etc. Co.,* 37 Cal.App. 277, 283 [174 P. 927]; *St. Paul Fire etc. Co.* v. *Southern Pac. Co.,* 30 Cal.App. 140, 142 [157 P. 247]; *Fay* v. *Cox,* 45 Cal. App. 696, 699-701 [188 P. 623].)

The defendants' foreman, Woods, selected the place where the work was to be done. On a previous occasion he had performed welding services for plaintiffs near these bales of burlap patterns and had then realized they might be burned from a spark emitted by the apparatus. On that morning, he said he gave the operator, Edwards, instructions relative to safety measures. ■ It is a fact certainly known to every welder—it is even a matter of common knowledge—that sparks are thrown off in the process of welding and that the presence of wind increases the danger of a conflagration. The welder, Edwards, was not produced as a witness by either side, he having moved to Ohio between the date of the fire and the time of trial. But evidence of an oral statement made by him to his foreman, Woods, was admitted without objection. The statement, in part, is as follows: ''I asked him if he knew how it caught fire and he said he didn't really know; that the wind had been coming in gusts, and it could have carried a spark over to the burlap. . . . The only thing that he could logically figure was that a spark from the welder had started the fire.''

The witness, Charles Jump, fire captain of the Kern County Fire Department, who conducted an investigation on the day of the fire, testified, without objection, that the fire had started at the outside of the bales and worked in toward the center; that there was not any evidence of ''spontaneous combustion''; that in his opinion, the fire was started by the welding operations, and that there could have been no other

cause. (See *Manney* v. *Housing Authority,* 79 Cal.App.2d 453 [180 P.2d 69].)

Eugene Buerkle, an experienced welder, testified that during welding, sparks from the molten metal and flux could fly through the air as far as 35 or 40 feet and still be too hot to pick up.

The defendant, Turner, admitted to the witness Wofford Benjamin Camp, Jr., on several occasions that "There wasn't any other manner by which the fire could have started, other than from his men"; that "it had to come from welding"; and that "it was his responsibility." Similar admissions were made by him to the witnesses Collins Hath and Harold Jewett. ▮ These constituted declarations of a party against his interest and were proper proof to be considered by the trial court. (*Bonebrake* v. *McCormick,* 35 Cal.2d 16, 18-19 [215 P.2d 728]; *Card* v. *Boms,* 210 Cal. 200, 204 [291 P. 190]; *Gates* v. *Pendleton,* 71 Cal.App. 752, 756 [236 P. 365]; *Scott* v. *Sciaroni,* 66 Cal.App. 577, 582 [226 P. 827]; Code Civ. Proc., § 1870, subd. 2; 4 Wigmore on Evidence (3d ed. 1940), § 1048, p. 2.) There is ample evidence to sustain the court's finding of proximate cause.

▮ Similarly, the defendants' negligence was established by substantial evidence. The fact that the place selected by defendants' employees for the welding operations was so close to the combustible material that a spark from the apparatus started the fire, the fact established by the witness Buerkle that holes were burned in some of the drums through the application of excessive heat by the welder, and the fact that the foreman, Woods, absented himself and did not keep a fire watch at the scene of the work, all were factors which the court had before it, and the admissions against interest made by the defendant, Turner, were legitimately weighed by the finder of fact.

It is unnecessary to do more than mention the other two points raised by appellant. His argument that the doctrine of res ipsa loquitur is not available to respondents is of no importance in view of the holding herein that there was ample proof of negligence by direct evidence; and, as to the plea of contributory negligenec, there is no proof that would have warranted the trial court in finding any negligence on the part of the plaintiffs.

The judgment is affirmed.

Barnard, P. J., and Mussell, J., concurred.