[Civ. No. 8946.   Third Dist.   Oct. 23, 1957.]

LAFAYETTE J. SMALLPAGE, Petitioner and Respondent, v. WINAFRED ORCHARDS COMPANY (a Corporation) et al., Defendants and Respondents; SUE ISHIDA, Appellant.

Gordon H. Winton, Jr., and T. D. Itano for Appellant.

Frank F. Chuman as Amicus Curiae on behalf of Appellant.

A. M. Mull, Jr., and Smallpage & Willis for Petitioner and Respondent.

Edmund G. Brown, Attorney General, and William J. Power, Deputy Attorney General, for Defendant and Respondent State of California.

WARNE, J. pro tem.*—This is an appeal from a judgment declaring that respondent Smallpage is entitled to a refund of $25,000 paid by him pursuant to a compromise settlement made in an escheat proceeding brought under the Alien Land Law.

In 1942 the State of California commenced proceedings under the Alien Land Law to escheat the properties known as the Vaccaro and the West properties which together were known as Winafred Orchards. At the time of the escheat proceeding, the legal title to these properties was vested in Lafayette J. Smallpage. Both Smallpage and Sue Ishida, among others, were named as defendants. This escheat proceeding, however, was concluded by a compromise settlement by which the State of California received $25,000 from Smallpage. After the settlement, the legal title to the properties in question continued in Smallpage.

In 1952, the Alien Land Law was declared unconstitutional. Subsequently, the Legislature enacted a remedial statute in which it was provided that any person named as a defendant in a prior escheat proceeding which terminated in a compromise settlement may file a petition with the superior court to obtain the amount which the state received by way of settlement. The statute provides that the court in deciding who shall be entitled to the refund ". . . shall make its de-

---

*Assigned by Chairman of Judicial Council.

termination without regard to technicalities of title and shall give weight to the equitable merits of the various claims, and the fact that the payment to the State was made by any particular claimant shall not be controlling." (Stats. 1953, ch. 1816.)

It is the contention of Sue Ishida that she, together with Smallpage, had an interest in the properties known as Winafred Orchards; that Smallpage was also her attorney; that the agreement between Smallpage and Sue Ishida, whereby Sue Ishida is alleged to have transferred her interest in the properties to Smallpage is invalid because Smallpage, as her attorney, had violated his fiduciary duties owing to Sue Ishida by taking advantage of the Alien Land Law in concluding said agreement; that Smallpage had subsequently sold these properties to a third party making a profit from the sale; that Sue Ishida was rightfully entitled to a portion of the proceeds from the sale because the agreement under which she transferred her interest to Smallpage was voidable; that she is the party who has been injured by the Alien Land Law; that she was without remedy to assert her rights until the enactment of chapter 1816, Statutes of 1953; and that, therefore, she is now entitled to recover the money which the Legislature had decreed to be paid to the injured party.

The trial court found and the evidence shows that Sue Ishida is the widow of Henry Ishida who died on or about November 3, 1940; that Sue Ishida was the sole legatee under the will of Henry Ishida and she succeeded to all of his estate; that the Vaccaro property was purchased in 1926 and that the legal title to said property was acquired by Lafayette J. Smallpage and Carrie M. Smallpage, his mother; and that the West property was acquired in 1940 and the legal title thereto vested in Lafayette J. Smallpage. The trial court found, however, that 55 per cent of the beneficial interest in these properties was vested in Henry Ishida who had acquired such interest for the benefit of his daughter, Gladys Ishida, and that 45 per cent of the beneficial interest was acquired by Lafayette J. Smallpage. The record further reveals that in 1937 the legal title to the Vaccaro property was transferred to the Winafred Orchards Company which was incorporated in the same year; that 45 per cent of the stock of said corporation was issued to Lafayette J. Smallpage and 55 per cent to Carrie M. Smallpage; that the Winafred Orchards Company was dissolved on or about December 29, 1941, and Smallpage succeeded to all the property formerly owned by

said corporation; that after the death of Henry Ishida the beneficial interest in the aforementioned properties was jointly owned by Sue Ishida and Gladys Ishida; that in the early part of 1941 after the death of Henry Ishida, conferences were held among Lafayette J. Smallpage, Sue Ishida and Gladys Ishida in order to discuss the termination of their joint interests. Smallpage offered either to buy or sell in accordance with a certain appraisal of the properties in question. Gladys and Sue Ishida did not desire to purchase, and a price of $16,500 was mutually agreed upon as the selling price of the Ishida interest. Thereafter the Ishida interest was sold by them to Smallpage, who paid the full purchase price thereof. The court further found that during the negotiations relating to the sale of the Ishida interest Smallpage did not take advantage of either Sue Ishida or Gladys Ishida but acted with utmost fairness; that the Ishidas were represented by attorneys of their own choosing and the parties dealt with each other at arm's length. The court also found that the selling price of the Ishida interest was a fair market value thereof. The court further found that on June 15, 1942, the State of California filed a petition to declare an escheat of the Vaccaro and West properties to the State of California and that on June 26, 1942, Smallpage made a compromise settlement with the State of California in said proceedings whereby he, out of his own funds, paid $25,000 to the state. Carrie M. Smallpage has passed away and Lafayette J. Smallpage has succeeded to her interest in the properties in question. Within several years after the escheat proceedings Smallpage sold the Vaccaro and West properties to third parties at a price of $82,000.

Pursuant to the findings of fact and the evidence produced at the trial, the trial court concluded that Smallpage was entitled to the $25,000. Judgment was entered accordingly.

Appellant contends that the finding that Smallpage purchased the Ishida interest in an arm's length transaction is not supported by the evidence. We have examined the entire record in the case and conclude that there is substantial evidence to support the court's findings. Appellant's principal argument concerns the weight of the evidence and inferences to be drawn therefrom. These were matters for the trial court to determine. ▮ A finding will not be disturbed if there is sufficient substantial evidence to support it (*Treadwell* v. *Nickel*, 194 Cal. 243 [228 P. 25]), and this is true, though there be no conflict in the evidence, if dif-

ferent inferences may reasonably be drawn therefrom. (*Fanning* v. *Green*, 156 Cal. 279 [104 P. 308]; *Parrino* v. *Rallis*, 116 Cal.App. 364, 366 [2 P.2d 515].) ▮ Further, in determining whether the evidence is sufficient to sustain a judgment, a court must view the evidence in the light most favorable to the prevailing party. (*Rudolph* v. *Tubbs*, 46 Cal.2d 55 [291 P.2d 913].)

▮ The record shows that both Mrs. Ishida and Mr. Smallpage desired to terminate the joint interest which they held in the properties. Each obtained an independent appraisal of the properties. Mrs. Ishida had the choice of either buying or selling or, if that was not agreeable to her, the properties could be sold and the proceeds divided. Mrs. Ishida finally agreed that she would sell her interest to Mr. Smallpage for $16,500. In all of these proceedings Gladys, Mrs. Ishida's 18-year-old daughter, participated and knew of her status in connection with the ownership and the Ishida interest in the properties. Mrs. Ishida had separate counsel represent her in the transaction. Mr. Smallpage was also represented by separate counsel. The trial court in its written decision said: "She [Mrs. Ishida] also claims that as Mr. Smallpage was an attorney in the estate proceeding and because of his relations to the property and Mrs. Ishida and Gladys, she was entitled to have considered the relationship of attorney and client in Mr. Smallpage's dealing with her. I am satisfied, however, that Mr. Smallpage did not take any advantage whatever of either her or Gladys, but acted with the utmost fairness." There is substantial evidence to support this statement and it is not for this court to hold to the contrary. Any presumption of undue influence or insufficiency of consideration which could have arisen under the provisions of section 2235 of the Civil Code by reason of the attorney-client relationship has been overcome by the court's findings.

▮ Appellant next contends that the trial court erred in failing to decide the case based upon "the equitable merits of the various claims." It is conceded that Mr. Smallpage paid the $25,000 to the state out of his own funds. It seems to us that the trial court, in holding that Mr. Smallpage was entitled to have refunded to him the money he had paid the state, was deciding the case upon equitable merits. It was Mr. Smallpage who had suffered the loss of the $25,000 and no one else. Further, it was by reason of the $25,000-payment that the property was saved from escheating to the State of California under what was then believed to be a valid escheat provision of the Alien Land Law.

Lastly, appellant contends that the trial court erred in refusing to grant a new trial upon the ground of newly discovered evidence. The alleged newly discovered evidence was in reference to the payment of an alleged gift tax which it is claimed that Mr. Smallpage testified he had made. It is contended that Mr. Smallpage's testimony respecting this matter was not true, and therefore the trial court should have regarded all of his testimony with suspicion. Respondent filed a counteraffidavit denying that he had testified as claimed by the appellant, and that if the record so indicated, it was in error. The trial court, at the hearing of the motion for a new trial, had before it these affidavits and unquestionably considered the merits thereof. It found against appellant by denying her motion for a new trial. Here again appellant is arguing the weight of the evidence which is not for us to consider. We find no merit in this contention nor in any of the contentions made by appellant.

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

A petition for a rehearing was denied November 19, 1957, and appellant's petition for a hearing by the Supreme Court was denied December 17, 1957.