[L. A. No. 25482.   In Bank.   July 26, 1960.]

Estate of JOHN C. F. SCHULTZ, Deceased. GUSTAVE O.
E. SCHULTZ, Appellant, v. ALBERT F. BOLZ, Re-
spondent.

514

Thompson & Colegate, James M. Wortz and Elias Mansfield for Appellant.

Frank W. Doherty and Raymond A. Nelson for Respondent.

DOOLING, J.—This is an appeal from an order admitting two holographic documents to probate as the last will of the deceased, John C. F. Schultz, who died on May 15, 1958. A surviving brother, Gustave O. E. Schultz, offered for probate a witnessed will executed in 1951. There also was offered for probate by Alfred F. Bolz, a friend of the deceased, two documents dated respectively, February 1, 1956, and March 22, 1956.[1] Both of these latter documents were admittedly in the deceased's handwriting. The court denied probate to the 1951 will on the ground of its revocation by the 1956 instruments and admitted to probate the latter two holographic documents as the integrated last will of the deceased.

---

[1] As appears hereinafter, the portion of the letter dated March 22, 1956, which was admitted to probate, was separately dated February 1, 1956.

Mr. Bolz received the February 1, 1956, document from the deceased through the mail. The record does not show whether there was an accompanying letter. The document was headed: "Copy. Last Will and Testament." After appointing Mr. Bolz as "administrator" and providing for a series of $1.00 gifts to several relatives, the document concluded with a residuary clause as follows:

"All the rest, residue and remainder of my estate, real, personal or mixed, wheresoever situate, of which I may die seized or possessed or to which I may be entitled at the time of my desease, I give, devise and bequeath as follow to wit:

"A — To my good friend Leopold Singwald whom owes me the Sum of $400.00 I will cancel the debt.

"B — To my beloved niece Ella (Alke) Ilse Ahrensburg in Holstein near Hamburg, Germany

"C — To my nephew Hans Ebinger and his Wife in L.A.C.

"D — To Mrs. Katie Whittemore 227 So. Flower St. in L.A.C.

"E — To Tom Nelson—a Farmer in Perris, Calif.

"F — To my good friend Geneva Miller in L.A.C.

"G — To my good friend Henry Goerke

"Hereunto subscribed my Name this first day of February 1 —A.D. 1956

John C. F. Schultz

Rt. 1—Box 287—Perris, California"

It will be noted that except for the first item in the above residuary clause, the amounts of the individual gifts are not specified. The second document was part of a letter dated March 22, 1956, which the deceased sent to Mr. Bolz. It was addressed to "Dear Albert" and after asking for some advice relative to the presentation of a property damage claim, the letter concluded:

"Inclose you find the rest of my Will please fill in on your *copy* as follows:

"A — To my friend Leopold Singewald whom owes me $400.00 for over 5 years already but has always paid the int*r*ess—I will cancel that debt in case off my Death.

"B — To my beloved niece Mrs. Ella Ilse Ahrensburg in Holstein Germany $5,000.00

"C — To my nephew Hans Ebinger and his wife Ina $1000.00. They live in Los Angeles 7 — Calif.

"D — To Mrs. Katie Whittemore $100.00 her Adr. is 227 So. Flower Str. Los Angeles Calif.

"E — To my friend Tom Nelson $100.00 in Perris Calif.

"F — To my friend Geneva Miller in Los Angeles Calif. $100.00 One Hundred Dollars

"G — To my friend Henry Goerke $100.00 One Hundred Do

"All the rest, residue and remainder I do hereby bequeath to Albert F. Bolz 637 Covina Blvd. San Dimas Calif.

"Hereunto subscribed my name this first day of February 1 — A.D. 1956.

John C. F. Schultz

Rt. 1 — Box 287 —

Perris — California"

The deceased had written other letters to Mr. Bolz shortly prior to and after the March 22, 1956, letter. They were: (1) a letter dated March 19, 1956, wherein the deceased stated: "Next time I send you the list of names for my new will and how much for *each*"; (2) a letter dated March 20, 1956, wherein the deceased noted: "Dear Albert I nearly forgot to tell you I am just so absen*d* minded. I made up the list of all those in my will and what everybody is going to get and many thanks in advance"; and (3) a letter postmarked March 23, 1956, wherein the deceased wrote: "I am very glad I changed the will and it is in your hands again. Amen." The first two letters were informally signed "Your sincere friend John." The third letter was unsigned and contained a separately written list of the relatives and friends of the deceased, with their gift amounts identically stated as in the specific listing of the March 22, 1956, letter.

There was no evidence that an original holographic will had ever been seen in decedent's possession, and after his death a thorough search of his home and personal effects was made but no other documents purporting to be a will were discovered. In these circumstances, the trial court found that the offered holographic documents of February 1, 1956, and March 22, 1956, were written with testamentary intent and constituted the last will and testament of the deceased.

Appellant concedes that each of the two documents satisfies the formal requirements for an holographic will[2] but he argues: (1) that there is no substantial evidence that the decedent executed either of the documents with *animus testandi*, i.e., that he executed either document with the intention that it should be anything other than a non-testamentary copy of an original will which he must have kept in his own

---

[2]The fact that the second document was part of a longer letter does not affect its sufficiency as a will. (*Estate of Button*, 209 Cal. 325, 330-331 [287 P. 964]; *Estate of Spitzer*, 196 Cal. 301, 306-307 [237 P. 739].)

possession; and (2) that in any event the case is governed by a presumption that the original will, of which the probated documents constitute a copy, and which it must be inferred that decedent had executed, was destroyed by the decedent with the intent of revoking the same.

We have concluded that in all substantial respects, this case is governed by *Estate of Janes*, 18 Cal.2d 512 [116 P.2d 438]. In *Janes* we reversed an order of the probate court refusing probate to a document which in form satisfied all of the requirements of an holographic will, but which had a notation attached to it in the decedent's handwriting reading: "This is a copy of my last Will, the original is in my safe deposit box." (18 Cal.2d, p. 514.) ▮▮ Of the claim that the instrument was not intended to have testamentary effect because the decedent had designated it a copy we said, after noting "the policy of the law favoring testacy rather than intestacy" (18 Cal.2d, p. 515) : "The designation of an instrument as a 'copy' is not alone sufficient to establish that the decedent lacked testamentary intent in executing the instrument. The word 'copy' implies that the instrument so labeled is identical with another instrument. . . . If it is properly executed, a copy of a will is in effect the same as a duplicate (citations), and it is clear that a properly executed duplicate may be admitted to probate." (18 Cal.2d, p. 516.)

▮▮ As to the claim that the failure to find an original after the decedent's death created a presumption that he destroyed it in his lifetime with intent to revoke it, we said in *Janes*, 18 Cal.2d at page 517: "In the instant case, however, there was no evidence that anyone had ever seen the 'original' will and the only evidence of its existence was decedent's statement in the notation. The decedent might have intended to execute another copy of his will to be kept in his safe deposit box and failed to do so; but this would not prevent the probate of the will produced. (Citations.) Under these circumstances, there is no evidence to support the theory of revocation."

▮▮ The facts in the instant case, while differing from those in *Janes*, are in some respects stronger. In *Janes* the decedent expressly declared in writing after designating the document admitted to probate "a copy of my last Will": "the original is in my safe deposit box." (18 Cal.2d, p. 514.) There was no such explicit declaration by the decedent in the case before us, and the existence or nonexistence of an original will is wholly a matter of inference. There is also the express declaration of the decedent in his letter postmarked the day

after the letter containing the second portion of the will admitted to probate was written: "I am very glad I changed the will and it is in your hands again. Amen." This statement furnishes strong support for the trial court's conclusion that the documents sent to Bolz were executed with testamentary intent.

Appellant places great stress upon the words introducing the second document admitted to probate: "Inclose you find the rest of my Will please fill in on your *copy* as follows: . . . ," claiming that these words are necessarily inconsistent with an intent that the two documents should have a testamentary effect. If used by a lawyer, this might well be true, but decedent was a layman, the extent of whose knowledge of the law affecting wills was in no way established.

The probate court was entitled to consider all of the evidence in arriving at decedent's intent, including the fact that both documents were formally dated and signed with the decedent's full name, whereas his letters to Bolz referring to his will were otherwise either signed with his first name only or unsigned; that he apparently took care to date back the testamentary portion of his letter of March 22 to February 1, the date of the first incomplete will; and that, as above noted, after sending the letter of March 22, in a letter postmarked the very day following he wrote: "I am very glad I changed the will and it is in your hands again. Amen."

At the most, this is a case in which the evidence before the probate court would support conflicting inferences on the questions posed by appellant, but where either of two inferences may be reasonably drawn from the evidence by the trier of the facts, the reviewing court will not substitute its deductions for those of the trial court. (*Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689].)

The order is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and White, J., concurred.