[Civ. No. 6706.   Fourth Dist.   Oct. 16, 1961.]

ZELMA WELKER, Respondent, v. SCRIPPS CLINIC AND
RESEARCH FOUNDATION, Appellant.

Luce, Forward, Hamilton & Scripps, Arvin H. Brown, Jr., and Henry F. Walker for Appellant.

Robert H. Green for Respondent.

COUGHLIN, J.—The plaintiff, who is the respondent herein, sued the defendant, which is the appellant herein, for damages on account of injuries sustained while she was a patient at a hospital operated by the defendant; alleged that her injuries were caused by the defendant's negligence; and recovered judgment. The defendant appeals, contending that the trial court erred in refusing to submit to the jury the issue of contributory negligence, which had been pleaded as a

defense, and in instructing the jury that the doctrine of res ipsa loquitur applied to the case as a matter of law.

The primary issues on appeal involve a determination (1) as to whether there is any substantial evidence which, if accepted by the jury, would have sustained a finding of contributory negligence, and (2) whether the evidence, without conflict, establishes all of the essential elements of res ipsa loquitur.

The plaintiff, as a patient at the defendant's hospital, had undergone a series of diagnostic examinations. On the day of the incident resulting in her injuries she had been prepared for and was the subject of a bronchogram, an X-ray examination of the breathing tubes within the lung. Preliminarily she was given medication for anesthetic and sedation purposes, to facilitate putting an oily substance into the lung, which is essential to the taking of X-ray pictures of the area. The medication given the patient consisted of seconal, demerol, and scopolamine. The first of these was administered at 9 a. m.; the latter two at 10 a. m. At this time the plaintiff was in her hospital room in a hotel-type bed without side rails. She was taken to the X-ray room at 10:20 a. m.; given the tests; returned to her room at 12 noon; placed in the bed without side rails; and given sulfadiazine.

The plaintiff testified that after being taken to the place where the tests were performed she remembered someone trying to awaken her to take a pill and the next thing she remembered was being on the floor of her room, trying to stand up but that she kept falling and hitting her head on the dresser, that she "was just falling all over the room," and somehow got into the bathroom where she fell in the same way. She did not know at what time she was returned to her room or at what time the falling episode occurred.

The hospital bedside record, which was introduced in evidence, shows that the plaintiff was given a nasal spray at 2:15 p. m.; was nauseated; at 2:30 p. m. was given medication for the nausea; at 3 p. m., according to an entry made by a nurse named Grant, was found sitting out of her bed writing, and was put back into bed; and at 4 p. m. was given sulfadiazine.

The evening supervisor testified that she came on duty at 3 p. m.; first saw the plaintiff, who was sitting up in bed, sometime between 5 and 6 p. m.; noticed a bruise on her nose and forehead; conversed with her; and that in substance, this conversation was as follows:

"Mrs. Welker told me she had gotten up out of bed to go to the bathroom and that she had earlier been told to stay in bed by Mrs. Grant when Mrs. Grant found her up by the desk in her room writing a letter. Mrs. Grant had put her back to bed, and she had been told to ring for a nurse if she was to get up again. She said that she got up to go to the bathroom, thinking she felt well enough so she didn't need a nurse and told me that she fell when she was near the doorway, there is a passageway between the bathroom and the room itself and when she was near the doorway to her room she stumbled and fell or started to fall and that she knew she should have gone back to bed, but she continued on to the bathroom and she said that she fell in the bathroom. . . . I agreed with her she should have rung for a nurse and I asked her to please stay in bed and ring for a nurse if she wanted to get up anymore and I would find Dr. Froeb, whom I thought would be making rounds at that time and I went out of the room to look for him. . . . [S]he apologized for having gotten out of bed without our help and said she was sorry to be causing trouble."

Dr. Froeb testified that the first time he saw the plaintiff after the bronchogram had been taken was at approximately 6 p. m.; that she had bruises on her nose and forehead; that she told him she had fallen and struck herself on various pieces of furniture in the bedroom and bathroom; and from the information thus obtained he entered a note on her hospital chart that she "fell." A pertinent part of this note reads: "The patient fell in her bathroom this afternoon after bronchograms while under the influence of demerol, scopolamine, amytal."

It appears that the doctor later learned that the patient was given seconal instead of amytal as noted in his report.

The defendant concedes that the evidence is sufficient to support a finding of negligence on its part, but contends that the evidence also would support a finding of contributory negligence, which it had pleaded as a defense; and claims that the court committed prejudicial error in withdrawing that issue from the jury and refusing to give its proposed contributory negligence instructions.

"It is hornbook law that each party to a lawsuit is entitled to have the jury instructed on all of his theories of the case that are supported by the pleadings and the evidence. It is incumbent upon the trial court to instruct on all vital

issues involved.'' (*Phillips* v. *G. L. Truman Excavation Co.,* 55 Cal.2d 801, 806 [13 Cal.Rptr. 401, 362 P.2d 33].)

Contributory negligence, when pleaded as a defense, is such an issue, and a refusal to instruct thereon constitutes prejudicial error ''in any case where the evidence admitted in support of the defense, if believed, would support a verdict in favor of the complaining party.'' (*Phillips* v. *G. L. Truman Excavation Co., supra,* 55 Cal.2d 801, 806.) Where the evidence on the issue is conflicting or is subject to different inferences, the question is one of fact and should be submitted to the trier of fact for decision. (*Phillips* v. *G. L. Truman Excavation Co., supra,* 55 Cal.2d 801, 806.)

In the case at bar, the plaintiff claims that she was so under the influence of the drugs administered to her preliminary to the bronchogram that she was unable to exercise ordinary care for her own protection; that she ''admittedly'' was not conscious at the time of the accident; and, therefore, as a matter of law, could not be chargeable with contributory negligence. This contention is rested on the aforementioned statement of Dr. Froeb, made after his interview with her, and written in the hospital record, that ''the patient fell in her bathroom this afternoon after bronchograms while under the influence of demerol, scopolamine, amytal.'' On its face, this statement is subject to interpretation and, at the most, raises a conflict in the evidence respecting the condition of the plaintiff when she was injured. Conflicts in the evidence, conflicting interpretations thereof, and conflicting inferences which reasonably may be drawn therefrom present issues of fact for determination by the trier of fact. (*Estate of Schultz,* 54 Cal.2d 513, 518 [6 Cal.Rptr. 281, 353 P.2d 921]; *Hamilton* v. *Pacific Elec. Ry. Co.,* 12 Cal.2d 598, 602-603 [86 P.2d 829]; *Coutts* v. *Grant,* 184 Cal.App.2d 255, 257 [7 Cal. Rptr. 431].) The doctor's note does not purport to specify to what extent the plaintiff ''was under the influence'' of drugs at the time she fell; does not necessarily establish that she was unconscious; and, in this regard, was subject to interpretation. In addition, read literally, the statement is subject to the further interpretation that the plaintiff was under the influence of the named drugs at the time the bronchograms were performed; not when she fell. Plaintiff's conversation with the night supervisor could have been accepted by the jury not only as a contradiction of her testimony that she did not remember what happened after returning to her room until the time of her fall, but also as an admission that she

knew she should not get out of bed without first ringing for a nurse; that such a warning had been given her; that she was conscious of this knowledge at the time she arose to go to the bathroom, but proceeded without assistance because "she felt well enough so she didn't need a nurse"; and that she appreciated she was causing trouble by getting out of bed without help. Moreover, the circumstances under which this statement was made, as well as the context thereof, furnished a legally adequate basis for an inference that the plaintiff was sufficiently conscious at the time she was returned to bed by Nurse Grant, and at the time she got out of bed to go to the bathroom, to appreciate the necessity of asking for help before getting out of bed, and the necessity for returning to her bed when she started to fall while on her way to the bathroom.

█ "A declaration by a litigant contrary to his position in the lawsuit is admissible under an exception to the hearsay rule as an admission. It is positive evidence, that is to say, it is evidence which tends to prove the truth of the matter admitted." (*Bonebrake* v. *McCormick,* 35 Cal.2d 16, 18-19 [215 P.2d 728] ; see also *Card* v. *Boms,* 210 Cal. 200, 204 [291 P. 190] ; *Hall* v. *Bark "Emily Banning,"* 33 Cal. 522, 524; *Camacho* v. *Escobedo,* 152 Cal.App.2d 198, 199 [313 P.2d 28] ; *W. B. Camp & Sons* v. *Turner Steel etc. Co.,* 141 Cal.App.2d 569, 572 [297 P.2d 125] ; *Gates* v. *Pendleton,* 71 Cal.App. 752, 757 [236 P. 365].)

█ Evidence of the extrajudicial admission of a fact by a party, of itself, is sufficient to establish the truth of that fact. (*Bonebrake* v. *McCormick, supra,* 35 Cal.2d 16, 18-19; *Jacobus* v. *Brero,* 190 Cal. 374, 375 [212 P. 617] ; *Scott* v. *Sciaroni,* 66 Cal.App. 577, 582 [226 P. 827].) █ Whether the plaintiff acted as an ordinarily prudent person would have acted under similar circumstances was a question of fact for the jury and the issue of contributory negligence should have been submitted to it for decision. The failure of the trial court to do so was prejudicial error which requires a reversal of the judgment.

The court also instructed the jury that from the happening of the accident in question "there arises an inference that the proximate cause of the occurrence was some negligent conduct on the part of the defendant," and thus advised them, in substance, that the doctrine of res ipsa loquitur applied to the facts of this case as a matter of law. Under the record, this was error. █ Where there is a conflict of evidence,

or of inferences deducible therefrom, as to the existence of any of the conditions upon which the res ipsa loquitur rule is predicated, the issue raised by such conflict must be submitted to the jury under appropriate instructions. (*Seneris* v. *Haas,* 45 Cal.2d 811, 823 [291 P.2d 915, 53 A.L.R.2d 124]; *Ybarra* v. *Spangard,* 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1258]; *Dunn* v. *Vogel Chevrolet Co.,* 168 Cal.App.2d 117, 120 [335 P.2d 492].) ■ In the case at bar, there is a conflict in the evidence as to whether voluntary action on the part of the plaintiff contributed to the accident. The defendant contends that in withdrawing this issue from the jury and determining as a matter of law that the doctrine applied, the court erred. We agree with this contention. (*Dunn* v. *Vogel Chevrolet Co., supra,* 168 Cal.App.2d 117, 120; *Kite* v. *Coastal Oil Co.,* 162 Cal.App.2d 336, 344-345 [328 P.2d 45].)

■ The res ipsa loquitur instruction in question also is defective because it ignored the defense of contributory negligence. Among other things, the instruction given advised the jury that if there was no other evidence tending to overthrow the inference of negligence arising from the happening of the accident, or if that inference preponderated over contrary evidence, it warranted ''a verdict'' for the plaintiff. This assumes that a decision on the issue of the defendant's negligence was determinative of all issues, whereas the existence of contributory negligence would bar a plaintiff's verdict. As there was ample evidence in support of the contributory negligence defense, the instruction was erroneous. (*Kite* v. *Coastal Oil Co., supra,* 162 Cal.App.2d 336, 345.)

The judgment is reversed.

Griffin, P. J., and Shepard, J., concurred.