[No. B119255. Second Dist., Div. Seven. Dec. 15, 1999.]

Estate of MORRIS I. BRENNER, Deceased.
WILLIAM JAMES OSBORNE, Petitioner and Appellant, v.
ANITA SUSAN BRENNER, Contestant and Respondent.

William James Osborne, in pro. per.; Steven C. Bronson; William G. Cort; and Thomas Kallay for Petitioner and Appellant.

Taylor, Kupfer, Summers & Rhodes and Robert C. Summers for Contestant and Respondent.

**O**PINION

**NEAL, J.—**

## FACTS AND TRIAL COURT PROCEEDINGS

Appellant William James Osborne is a Los Angeles lawyer who formerly represented the decedent Morris I. Brenner. Respondent Anita Susan Brenner is decedent's daughter, named executor under Morris Brenner's formal will of November 6, 1990. After Morris died in May 1996, Anita petitioned for probate of Morris's 1990 will. Osborne then filed a petition to probate a handwritten or holographic will prepared by Morris in 1995.

Osborne's petition was heard at a court trial, at which the following evidence was presented.

In April 1995 Morris retained Osborne to represent Morris in a personal injury case. In September Morris mentioned his 1990 will to Osborne and asked Osborne to prepare a new will. Morris showed Osborne a copy of the 1990 will, on which Morris had made handwritten changes. Osborne declined to prepare a new will, but made interlineations on the marked-up 1990 will, at Morris's direction, changing some of its dispositions. Morris gave Osborne a copy of this marked-up will.

Soon Morris again asked Osborne to prepare a new will. Osborne again declined, but suggested Morris prepare a holographic will. Morris then sent Osborne a document which Morris said was his holographic will. Morris told Osborne that Morris intended to revoke the 1990 will, and gave Osborne several reasons for desiring to do so.

The purported holographic will which Morris gave Osborne was a three-page photocopy of a handwritten list of property dispositions, upon which there appeared handwritten ink additions, including: the note "my will of November 6, 1990 is void"; the signature "Morris Brenner"; the statements "This is my new will"; "my trustee and executor, lawyer James Osborne"; and "Will of Nov. 6, 1990 is void. M.B." The holograph also bore the original ink notation "witness," with the signature of a "Salvador Borja."

Following Osborne's receipt of the 1995 holograph, Morris in several conversations with Osborne referred to "his holographic will." In early 1996 Osborne prepared a draft of a new formal will for Morris, based on the dispositions in the 1995 holograph. Osborne told Morris to take the draft to an estate planning specialist, but Morris did not do so. Morris attempted instead to execute the will without assistance of counsel, did so erroneously, and thus invalidated it.

After Morris died, Borja delivered to Anita the original, yellow paper, handwritten matter which Morris had photocopied and annotated to constitute the holographic will. This was available at trial, and conformed exactly to the photocopied material in the holographic will.

A forensic document expert retained by Osborne testified that all the photocopied and ink handwriting on the holograph was Morris's, except for the notation "witness" and Borja's signature.

The trial court found that Morris had handwritten the text of the 1995 instrument, but the instrument did not qualify as a valid holographic will because the photocopy did not contain Morris's original handwriting. The document also failed to qualify as an attested will, so the court denied it admission to probate.

This appeal followed.

## DISCUSSION

The traditional method for making a valid will is that specified in Probate Code section 6110: a written instrument is signed by the maker of the will or testator, and witnessed by two witnesses who are present when the testator signs or acknowledges his signature.

Probate Code section 6111 provides an exception to the foregoing formalities, and makes valid a "holographic" or handwritten will "if the signature and the material provisions are in the handwriting of the testator." "Holographic" means simply a document wholly written by the hand of its author. (New Shorter Oxford English Dict. (1997), CD Rom, Version 1.0.03; 7 Oxford English Dict. (2d ed. 1989) p. 316.)

These sections reflect two competing policy concerns. The first and foremost concern is to carry out the intent of testators in disposing of their property. (*Estate of Russell* (1968) 69 Cal.2d 200, 205 [70 Cal.Rptr. 561, 444 P.2d 353].) This concern has led courts to urge great " 'liberality in accepting a writing as an holographic will.' " (*Estate of Baker* (1963) 59 Cal.2d 680, 683 [31 Cal.Rptr. 33, 381 P.2d 913].)

On the other hand, the policy underlying the traditional *formalities* required by Probate Code section 6110 is to prevent fraudulent dispositions of

testators' properties. This antifraud policy also is reflected in section 6111, which gives validity to an unwitnessed handwritten will because of the "recognized difficulty of forging an entire handwritten instrument." (*Estate of Black* (1982) 30 Cal.3d 880, 884 [181 Cal.Rptr. 222, 641 P.2d 754].) The antifraud policy is invoked as the reason for strictly following statutory requirements for executing wills. (*Estate of Howell* (1958) 50 Cal.2d 211, 215-216 [324 P.2d 578].)

Probate Code section 6111.5, added in 1990, permits admission of extrinsic evidence to "determine whether a document constitutes a will pursuant to section 6110 or 6111." This section expands the court's inquiry beyond simply asking if the formalities specified in sections 6110 and 6111 are satisfied. The court can look at extrinsic evidence to confirm the testator's intent, and to determine whether there is any danger of fraud.

Looking first only at the formalities, the validity of the holographic will here turns on whether photocopies of the testator's handwritten dispositions satisfy Probate Code section 6111. The trial court's construction of "handwriting of the testator" as requiring original ink on the page is not implausible. On the other hand, it is also reasonable to refer to a photocopy of someone's handwriting as "in their handwriting." Photocopies of handwritten testamentary dispositions carry pretty much the same assurance of authenticity as original ink. In each instance the genuineness of the testamentary dispositions tends to be shown by the fact that the testator himself wrote them out.

It is true that photocopying could be used to take excerpts from a handwritten document and distort its substance, but this concern usually could be addressed by adequate proof of authenticity—also required for documents in original handwriting.

On balance, we think section 6111 is properly construed to allow photocopies of the testator's handwritten dispositions, properly authenticated, as well as original ink writings. No case has addressed precisely the situation presented here, but several with similar facts support the conclusions reached here. (*Estate of Janes* (1941) 18 Cal.2d 512, 517 [116 P.2d 438] [handwritten document satisfying holographic will formalities, but with note attached stating "this is a copy of my last will," properly admitted to probate]; *Estate of Schultz* (1960) 54 Cal.2d 513, 516-517 [6 Cal.Rptr. 281, 353 P.2d 921, 81 A.L.R.2d 1106] [series of three letters in decedent's hand, two of them signed, revoking prior will, and containing bequests, properly admitted to probate].)

Moreover, as we have noted, the Legislature has determined that courts should consider extrinsic evidence in determining the validity of holographic wills. Substantial and uncontroverted extrinsic evidence in this case confirmed that Morris's intent was to replace the 1990 will with the 1995 holographic will.

### DISPOSITION

The order denying admission of the 1995 holographic will to probate is reversed. Appellant shall recover his costs on appeal.

Johnson, Acting P. J., and Woods, J., concurred.

A petition for a rehearing was denied January 11, 2000, and respondent's petition for review by the Supreme Court was denied April 12, 2000.