[Civ. No. 7723. Fourth Dist. Nov. 6, 1964.]

Estate of IRA LEE CRICK, Deceased. GERTRUDE L. HORAN et al., Plaintiffs and Appellants, v. ADA CRICK, Defendant and Respondent.

514

Dale C. Miller for Plaintiffs and Appellants.

Thompson & Colegate and Michael R. Raftery for Defendant and Respondent.

GRIFFIN, P. J.—This appeal was taken by contestants Gertrude L. Horan and Keith L. Crick, daughter and son respectively of decedent Ira Lee Crick, from a judgment and order admitting to probate certain writings as the last will and testament of Ira Lee Crick and appointing Reba E. Crick, widow of Ira, as administratrix with the will annexed.

The only issue on appeal is whether or not the holographic writings in question, sent by decedent to his divorced daughter-in-law, Ada Crick, were coupled with the requisite testamentary intent.

The contestants contend that there was no finding of fact that the writings were executed with testamentary intent. They also claim that the evidence was insufficient to support such a finding and hence there was no basis for the conclusion of law made by the court that they were written with such intent.

This court's inquiry must be limited to whether or not there is substantial evidence to support the trial court's finding that the writings in question were made with testamentary intent, for in a contested proceeding in probate the limitations imposed upon an appellate court's review of the facts are the same as in any other civil case. (*Estate of Bristol*, 23 Cal.2d 221, 223 [143 P.2d 689].)

Contestants' first contention that there was no finding of fact as to testamentary intent is answered by the probate court's finding of fact V that: "... IRA LEE CRICK ... exe-

cuted said documents with the intent that they be his Last Will and Testament.''

This finding satisfies the requirement enunciated by this court in *Estate of McAfee,* 182 Cal.App.2d 553, 556 [6 Cal. Rptr. 79], that the court must make definite and certain findings on all material issues joined in contested probate matters. The findings of testamentary intent was adequately supported by the evidence.

Petitioner Reba E. Crick presented documents written by decedent for probate as the last will and testament of decedent Ira Lee Crick. On July 27, 1960, decedent wrote a letter to Ada Crick in his own handwriting and signed it. This letter consisted of three pages. It reads in part as follows:

''In case anything should happen to me I want my two places in Riverside Co. to go to my son Keith Crick my daughter Girtrude [*sic*] L. Crick & Ada Crick each to receive one third.

''The above places are at presint [*sic*] tied up in the Underwood estate one is 160 acres and the other 25 acres more or less with the house on it which I am to receive tax free. Also there is $2000 in the Western Federal

[page] ''2

''& Loan Co. under the name of Mirtle [*sic*] B. Underwood or Ira L. Crick which tax has not been paid. A bank acct at Citizins [*sic*] National Bank Hemet Calif. & a bank acct at Bank of America at Broadway & Washington L.A. under name of I. L. Crick.

''To know what to do about the land in the estate contact Mr. Furgeson at Security First National Bank of Beverly Hills near Beverly & Santamonica [*sic*] Blv. [*sic*] and Mr. Wallace Scales who is attorney for the estate at 8421 - Wilshire Blv. [*sic*]

''signed Ira Lee Crick

[page] ''3

''All my personal things are to be devided [*sic*] between you, Keith & Girtie [*sic*]. Well I guess that is enough of that. . . .

''Ira''

The decedent further wrote the following:

''July 27-1960

''Dear Ada: This is just for you to read don't let lawyers or no one else know or there will be tax on it to. [*sic*] Cora Mitchell 623 North Harvard St. L.A. telephone no. NO-50587. She has $24,000 of mine in her box give her $500 & the rest

devide [*sic*] 3 ways as in rest. I may put some more in box next fwew [*sic*] day if I do I will let you know. As soon as things are settled so I can will make a real will the way I want it this is just in case. I also have a bank

[page] "2

"deposit box No. 272 Citizens Trust & Savings bank across street from my bank at Washington & Broadway which you will half [*sic*] to turn in unless I get you to sign with me. Key is in my pocket book. I am to be buryed [*sic*] at Evergreen Cemetery on Washington Blv. [*sic*] I havn't [*sic*] made arangements [*sic*] yet but will. My social security will pay part of it.

"In case I get real sick & can't talk like Pat did. I have two Ins. Policies in little wood box with my thing enough to pay all expenses in hospital.

"Ira"

"L.A. Calif. July 28, 1960

"If anything should happen to me there is $8000 in building & loan certifites [*sic*] under the name of Ira L. Crick or Mirtle [*sic*] B. Underwood of which I do not draw int it runs so as to compond [*sic*] int which by 1st of yr will amount to about $500.

"Will get under the one name as soon as I can.

"Ada Crick is to get & devid [*sic*] 3 ways to Girtrude [*sic*] Horan & Keith L. Crick & Ada Crick.

"Ira L. Crick"

■ A holographic will requires no particular words or form but need show only that the maker intended by the writing to dispose of property after his death. (Prob. Code, § 53; *Estate of Button*, 209 Cal. 325, 331 [287 P. 964].) The basic test of testamentary intent, as pronounced in *Estate of Button, supra* " '. . . is not the testator's realization that it is a *will*, but his intention to create a revocable disposition of his property to accrue and take effect only upon his death and passing no present interest.' "

■ The intent of the decedent that the distributions desired were to be made only upon his death can be gleaned from the beginning words of the writings in question: "In case anything should happen to me . . . " or "If anything should happen to me. . . ." The words "in case anything happens to me" were reasonably construed to mean, "in the event of my death" in *Thomason* v. *Gwinn* (Tex.Civ.App.) 184 S.W.2d 542; and in *Estate of Spies*, 86 Cal.App.2d 87 [194 P.2d 83], the words "In case of my death" were held

to show testamentary intent. The beginning phrases, coupled with the particularity of the description of what is to be done with various properties, the positive designation of beneficiaries, the instructions as to which attorney to contact, the burial instructions, the information as to the location of a safe deposit box and its key, together with evidence showing that decedent showed his wife a letter from Ada Crick, the person to whom the writings in question were sent, stating that she would "keep it until he made another will," all combine to provide sufficient evidence upon which a finding of testamentary intent could be based.

Contestants point to decedent's words: "As soon as things are settled so I can will make a real will the way I want it this is just in case" as showing that decedent did not consider the writings as a real will and therefore there was no present testamentary intent. An interim will is admissible even though the decedent expected to make a later will. (*Estate of Kuttler,* 160 Cal.App.2d 332, 342 [325 P.2d 624].) "This is just in case" would indicate a present intent to make a testamentary disposition. From the evidence, the word "real" should be interpreted to mean a formal witnessed will. (*Estate of Lampkin,* 203 Cal.App.2d 374 [21 Cal.Rptr. 513]; *Estate of Button, supra,* 209 Cal. 325.)

In addition, the trial court, over objections, received in evidence testimony of certain witnesses in respect to the intent of the testator in the execution of these letters which were accepted by the trial court as a will. Ada Crick testified generally that she was married to Keith Crick, the decedent's son; that they had two children, one of whom (Keith Crick, Jr., age 27) is mentally retarded and is receiving state aid; that she had known the decedent for over 30 years; that the decedent knew that his son Keith was not supporting Keith, Jr.; that the decedent had asked her about Keith Jr. and whether his father was contributing to his support; that she was divorced from Keith Sr. in 1953; that prior to his death Ira Lee Crick discussed his property with her; that she received the letters which were offered for probate through the mail, all in one envelope, and that they were entirely written, dated and signed in his own handwriting; and that upon receiving these letters she wrote Ira, acknowledging them.

Reba E. Crick testified generally that she was the widow of Ira Lee Crick; that she first met him in September 1960 and they were married in December 1961; that Ada Crick is her niece; that Ira told her on several occasions that he had taken

care of Ada and that he regarded her as his own daughter; that Ira told her that his son Keith was not supporting Keith Jr.; that in the summer of 1961, at Ira's ranchhouse he was cleaning out a drawer and he handed her a letter from Ada Crick addressed to him and told her (Reba) to read it; that in the letter Ada wrote that she had received his will and would keep it for him until he made a new one; that after she read it Ira again told her that he had taken care of Ada; that she did not know where the letter from Ada was then; that she had searched for it but that they had burned most of the contents of the drawer that he (Ira) was cleaning out and she expected that it was burned too; that Ira told her that he was going to make another will but that he was a ''hard man to get started.''

Mary Knudson testified generally that she was the daughter of Reba Crick; that she knew Ira Lee Crick two years prior to his death; that Ira told her that he regarded Ada as his own daughter; that Ira said he was sorry his son Keith had not taken care of his wife and children, but that he (Ira) had taken care of Ada; that this conversation took place in September of 1960.

Contestants called one Margaret E. Nelson, who testified that she had known decedent since 1935; that Ira Crick had lived with Myrtle Underwood since 1935; that Ira had no property in his own name; that everything was carried in the name of Myrtle Underwood; that she lived with them from 1937 until 1950, paid no room or board, but did a small amount of work around the ranch; that Ira told her that he wanted his son Keith to have his wedding ring and that he would take care of her (Margaret).

Wallace B. Scales, attorney for Myrtle Underwood's estate, and attorney for Reba Crick, testified that he met Ira Crick in 1960 when the Underwood estate was being distributed and that he did not recall ever discussing with Ira Crick the making of a will or the disposition of his property; that the letters offered for probate came to his attention in October 1962 when Reba Crick told him she had letters which might be a will; and that he obtained the originals and filed them with the court.

Another attorney called by contestants testified that they discussed the letters offered for probate and that Reba Crick told them that she had not known about them until they were filed; that she had talked with Ira about making a will and he had said that he would do it sometime.

It is the argument of contestants that the declarations of

intent to make a will were inadmissible to show the testamentary character of the letters. (Citing *Estate of Pagel,* 52 Cal.App.2d 38, 44 [125 P.2d 853].) The California Supreme Court in *Estate of Sargavak,* 35 Cal.2d 93, 96-97 [216 P.2d 850, 21 A.L.R.2d 307], dismissed the *Pagel* opinion as dictum and said:

"The extrinsic evidence in this case consists for the most part of the oral declarations of the testatrix before and after the execution of the instrument in question. Such declarations, whether made at, before, or after the execution of the instrument are admissible, if offered for the purpose of ascertaining the intent with which the instrument was executed [citing cases]. . . ."

It is contestants' argument that the letters themselves do not indicate that a will was intended; that the words "As soon as I can will make a real will the way I want it" are indicative of two things: first, that the decedent did not consider this to be a real will, and second, that he had not disposed of his property in the manner in which he desired to do so; that decedent married almost one year and a half after the letters were written and never told anyone that these letters were a will, nor did he deliver these letters to a third party, as in the case of *Estate of Spies, supra,* 86 Cal.App.2d 87; that decedent never gave any instructions that the letters were to be kept in a safe place or that they should be used as a will; that the burden of proof was on the proponent to prove that the document was a will (citing *Estate of Hathaway,* 38 Cal. App.2d 526 [101 P.2d 741]); that where a letter or document is a dying wish of the decedent and is written *in extremis,* only then the courts have been liberal in the construction of a letter as a will (citing *Estate of Spencer,* 87 Cal.App.2d 591 [197 P.2d 351]); that if a writer of a letter directs that the letter should not be shown to anyone else, this is clearly indicative of a lack of testamentary intent (citing 40 A.L.R.2d 708, 709; *Vickery* v. *Vickery,* 126 Fla. 294 [170 So. 745]; *In re Richardson,* 94 Cal. 63 [29 P. 484, 15 L.R.A. 635]); and that while the law favors testacy rather than intestacy, the law also favors relatives over strangers (citing *Estate of Golder,* 31 Cal.2d 848 [193 P.2d 465]). The authorities cited above by contestants are factually distinguishable.

It clearly appears that the documents offered for probate were executed with testamentary intent. (*Estate of Button, supra,* 209 Cal. 325; *Estate of Spies, supra,* 86 Cal.App.2d 87; *Thomason* v. *Gwinn, supra,* 184 S.W.2d 542; *In re Tinsley,*

187 Iowa 23 [174 N.W. 4, 11 A.L.R. 826] ; *Estate of Plumer,* 159 Cal.App.2d 389 [324 P.2d 346] ; *Estate of Taylor,* 119 Cal.App.2d 574 [259 P.2d 1014] ; *Estate of Schultz,* 54 Cal.2d 513 [6 Cal.Rptr. 281, 353 P.2d 921, 81 A.L.R.2d 1106].) In *Estate of Kuttler, supra,* 160 Cal.App. 332, the court said that it is immaterial that a decedent expected to make a later formal will which would supersede a holographic will he was executing.

We conclude that the finding of the trial court has sufficient evidentiary support.

Judgment and order affirmed.

Coughlin, J., and Brown (Gerald), J., concurred.