247 Cal.App.2d 254 (1966)
Estate of MICHAEL DARMS, Deceased. JOHN LAWRENCE, as Administrator With the Will Annexed, etc., et al., Petitioners and Respondents,
v.
SHRINERS HOSPITALS FOR CRIPPLED CHILDREN, Objector and Appellant.
Civ. No. 30068. 
California Court of Appeals. Second Dist., Div. Two. 
Dec. 15, 1966.
 J. Marion Wright and Owen E. Kupfer for Objector and Appellant.
 Mendelsohn, Haves & Miller, Haves & Miller and Howard P. Miller for Petitioners and Respondents.
 ROTH, P. J.
 Shriners Hospital for Crippled Children, a Colorado corporation, residuary legatee of the estate here involved, appeals from an order admitting to probate a letter entirely written, dated and signed by decedent as a codicil to a prior will.
 Michael Darms, a railroad conductor, died on March 9, 1963. He had executed a formal will on March 14, 1957, when a resident of Salt Lake City, Utah. At the time of his death decedent was a resident of California. The formal will named Walker Bank and Trust Company, a Utah corporation, (Bank) as executor of his estate and trustee of a testamentary trust created in the will. The formal will was admitted to probate in California on June 11, 1963.
 Bank could not qualify as executor or trustee. As a consequence John Lawrence and Mac Clement were appointed as administrators with-the-will- annexed and United California Bank was named as trustee. An accounting was filed. Judgment approving and settling the first account and for preliminary distribution was signed and filed on January 28, 1965.
 [1a] On or about November 21, 1961, decedent had dispatched a letter, which is the subject matter of this suit, to William J. Fitzpatrick, a trust officer of Bank, which was found in the files of Bank with decedent's formal will. The letter reads as follows:
 "Hollywood 1 1/21/61"
 "Mr. Fitzpatrick"
 Dear Sir
 In my will I left
 $3000.00 to Mr. John Lawrence *256
 of 1410 No. Stanley Ave.
 Hollywood 46.
 Wish you would
 change that to read
 $15,000.00 instead of $3000.
 Thanking you in advance
 wish to remain
 Yours sincerely,
 Michael Darms
 1825 Cahuenga Blvd.
 Hollywood 28
 Calif.""
 On March 17, 1965, the administrators filed the letter for probate. Why the letter was not offered for probate at the time the formal will was offered is not explained by the record. No issue was raised because of this tardiness in the trial court and none is raised here.
 The trial court found the letter to be entirely in decedent's own handwriting, "That the decedent intended by said document ... to change and modify the terms of his Will ...; that the decedent contemplated that such document could, by itself, effectuate the changes desired; that ... [it] was executed by decedent with testamentary intent and was intended by him to be a Codicil to his said Will. ..." The court admitted the document to probate and entered judgment accordingly.
 The sole issue is the validity of the letter of November 21, 1961, as an holographic codicil.
 The only evidence at the trial court was the letter itself, a stipulation of the fact that it was received by Bank, placed with the formal will in Bank's file, [fn. 1] that decedent had some high school training and had been employed as a railroad conductor. There is no evidence that the decedent inherited any property and a proper inference is that his estate was compiled by his own efforts and acumen. The estate comprised approximately $120,000 in assets, with nominal liabilities. It is therefore fair to infer that the decedent had some business education and sophistication. *257
 [2] The burden of proof is on respondent to prove all the material allegations of his petition, whether denied or not.
 [3] We also accept appellant's contention for the purpose of this case that when the evidence is uncontradicted this court is not bound by the trial court's conclusion and that the interpretation of the validity of the letter as an holographic codicil is a judicial function which may be exercised by this court independently of a finding by the trial court.
 In Parsons v. Bristol Development Co., 62 Cal.2d 861 [44 Cal.Rptr. 767, 402 P.2d 839], the court says at pages 865 and 866:
 "It is ... solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence. Accordingly, 'An appellate court is not bound by a construction of the contract based solely upon the terms of the written instrument without the aid of evidence [citations], where there is no conflict in the evidence [citations], or a determination has been made upon incompetent evidence [citation].' (Estate of Platt, 21 Cal.2d 343, 352 [131 P.2d 825]. Accord, Moore v. Wood, 26 Cal.2d 621, 629-630 [160 P.2d 772]; Western Coal & Mining Co. v. Jones, 27 Cal.2d 819, 826-827 [167 P.2d 719, 164 A.L.R. 685]; Estate of Wunderle, 30 Cal.2d 274, 280 [181 P.2d 874]; Estate of Fleming, 31 Cal.2d 514, 523 [190 P.2d 611]; Meyer v. State Board of Equalization, 42 Cal.2d 376, 381 [267 P.2d 257].)"
 We start with the settled rule repeated in many cases and stated in the Estate of Lawrence, [17 Cal.2d 1 [108 P.2d 893], at p. 6, as follows:
 "In the construction of wills the paramount rule, to which all others must yield, is that a will is to be construed according to the intention of the testator, as expressed therein, and this intention must be given effect as far as possible. [Citations.]"
 [4] We also accept the principle that it must appear from the face of the letter that it was intended by the decedent that the writing standing alone be a testamentary disposition of his property. (Estate of Sargavak, 35 Cal.2d 93, 95 [216 P.2d 850, 21 A.L.R.2d 307]; Estate of Tillman, 136 Cal.App.2d 313, 315 [288 P.2d 892].)
 Appellant argues that Mr. Darms had previously executed a formal will and was therefore presumably familiar with the procedure for its creation; his letter refers to his formal will ("in my will") and requests that Mr. Fitzpatrick, whose bank had physical possession of the will, "change that to read *258 $15,000.00 instead of $3000." His closing, "Thanking you in advance," is further indication that he contemplated necessary further action before the modification would be effective; "in advance" must mean in advance of Fitzpatrick's making the change in his will.
 Appellant concludes that decedent recognized the need for modifying the original instrument in some way in order legally to effect the change and to keep it formally accurate and did not intend the letter itself to be the codicil.
 Appellant relies heavily on Estate of Beebee, 118 Cal.App.2d 851 [258 P.2d 1101]. In that case, the decedent wrote a letter to the trust officer of a bank named as executor. The letter, aside from the date and address, was in substance as follows:
 "Dear Mr. Scott"
 "I wish to revoke all former wills & codicils to wills made by me as conditions no longer no longer [sic] exist, as at that time I wish to leave my entire Estate to my Son Ralph Agustus Beebee without reservation."
 "Sarah Agusta Beebee"
 "I am eighty nine years old and growing blind, and not able to get down town to the bank. So please do what is necessary under the circumstances, whether by codicile or a new will."
 "Sincerely"
 "Sarah A Beebee"
 It is to be noted that the Beebee letter consisted of two portions, one indicating what the decedent intended and the second indicating that she contemplated the execution of a new will or codicil. This court held in Beebee that the letter taken as a whole indicated that the decedent did not intend it to be testamentary. However, in considering the Beebee document, the first part of which is similar to the letter at bench, this court stated at pages 858-859:
 "Construing the instrument alone it shows it was not intended to be testamentary. While if the portion above the first signature were all there was to the document, it could be considered as testamentary in spite of the fact that it is in letter form, [fn. *] the balance of the document shows that at most it is a letter to the bank telling them how she wished to change her will but intending that the preparation of a codicil or new will *259 was necessary before such intent could be effected. To construe exhibit 2 as a will, the entire latter portion of it must be completely disregarded." (Italics added.)
 The record at bench shows that the letter-codicil was dated 1 1/21/61, approximately three and one-half years after the formal will had been executed. It was found at the Bank in the same file with the formal will. The stipulation admits that it was received by the employee of the Bank to whose attention it was addressed, and that it was physically present in the same file as the will.
 Accepting appellant's argument, the record shows that if there was something for the Bank to do, the Bank did precisely what the testator desired it to do. It filed the handwritten codicil with the formal will. By so doing the Bank effectuated the change which the testator made completely clear in the letter itself.
 There was nothing in the letter, nor does the record suggest anything, which required a rewrite of the formal will. The Bank might have caused the formal will to be rewritten, not for the purpose of adding effectiveness to what it had done when it filed the letter with the will, but for the purpose of convenience and efficiency in having one testamentary document instead of two, and thus guarding against loss. The filing of the letter with the will made its contents as legally effective as if it had been incorporated in a new will, formally witnessed, or by a redraft of the holographic codicil into one formally witnessed.
 In short, to accept appellant's reasoning we must find on no evidence whatsoever that even though the testator had effectuated his intention by his holographic document, he didn't want to rest on that document but was instructing the Bank to have a completely new will or a brand new codicil written for him. The most that can be said for appellant's position is that he expected the Bank to do one or the other if it was necessary to legally effectuate what he had done.
 We find nothing in the letter or in the record to suggest that the testator was so meticulous that he instructed the Bank to have one formal document drawn.
 The Estate of Beebee, supra, so heavily relied upon by appellant, fortifies this reasoning.
 [1b] Since the record shows without contradiction that the letter is holographic and its testamentary intent and disposition is quite clear, there was nothing for the Bank to do but file it with the will. *260
 It is undoubtedly true that if the document at bench had not legally qualified as an holographic codicil, the testamentary intent therein would have been just as clearly expressed, and if the Bank had done nothing, that intent would have been aborted. However, decedent's purpose would have failed, not because the letter lacked testamentary intent, but because it failed to conform to the strict requirements of an holographic document. It is a fair assumption, too, that if the Bank had been confronted with the factual situation posed, it would have caused a new will to be drafted for the precise reason that decedent's testamentary intent was defectively conveyed. In the situation at bench, the Bank properly concluded it was required to do nothing except file the codicil with the will.
 The order is affirmed.
 Herndon, J., and Fleming, J., concurred.
NOTES
[fn. 1] 1. Among other things, the stipulation stated: "As far as can be ascertained the document was sent to Mr. Fitzpatrick and at the time of the decedent's death was found by Mr. Fitzpatrick in his files together with the original will and other papers of the decedent. However, Mr. Fitzpatrick has no recollection of having received the document or having done anything upon its receipt."
[fn. *] *. "See Estate of Pagel, 52 Cal.App.2d 38 [125 P.2d 853], and see cases discussed in Estate of Spencer, 87 Cal.App.2d 591 [197 P.2d 351]."