260 Cal.App.2d 587 (1968)
Estate of ERNEST WOLFE, a Missing Person. DANIEL J. MONACO, Petitioner and Respondent,
v.
GERTRUDE PETERSON, Objector and Appellant.
Civ. No. 24406. 
California Court of Appeals. First Dist., Div. Four. 
Mar. 29, 1968.
 Carr, McClellan, Ingersoll, Thompson & Horn, Robert J. Macdonald, Marvin J. Christiansen and Quentin L. Cook for Objector and Appellant.
 Harold B. Reeve for Petitioner and Respondent. *590
 RATTIGAN, J.
 The question presented by this appeal is whether a handwritten letter is admissible to probate as its author's holographic will. The letter, which is in a barely legible scrawl, reads as follows (strikeouts by the author shown, within brackets):
 "Redwood City Calif"
 July 29--1927
 "R 1 Box 317"
 "Mr. Herman Wolfe"
 "Dear Brother I will drop you a few lines this morn. this leaves me OK hope you all are the same kid I am flat broke except my place I [a] have not got no job here yet so I am [leaveing] leaveing to hunt work I dont know where I am going but if I ever make enough money to get Stamps I will write you again but do not write untell you here from me it might be"
 "2"
 best for you to write Elsie the rest of the folk is enjoying life very well not so good here for me. We sold the store at Palo Alto I am leaveing my Place in Menlo Park for you if I never call for it [it] the place is yours it is rented now $22.50 per month the rent is due on the 5th of each month but you might [a] hafto give Elsie part to Colect it you can write about that if you
 "3"
 ever take a notion to come to Calif you will have a place to live in. say I am leaveing my trunk with Elsie but if she dont want it here she will send it to you it has all my pictures in it and ever thing that belongs to [illegible strikeout] me in it if they want to sell the place and all get to gether go ahead and you can have my part of it and all that the Estate
 "4"
 owes me on Papa expence when I came back there at his death Elsie knows all about it as she went part of it I have a note of it in my trunk I must close for this time do not know when I will write again do not write me write Elsie
 "Lots of love to Brother Herman from Ernest Wolfe"
 "PS if you want to sell the Place in Menlo Park go [a] head and sel it but do not"
 "5"
 sell it to buy the place back ther for you will loose money on it but if you thank that would be the best go head [three illegible strikeouts] *591
 "6"
 "I never come back untell I get an nother Start. Ernest"
 "if I were you I would keep this letter"
 When the letter was offered for probate, it was accompanied by the envelope in which it was apparently mailed. In the same handwriting as the letter, the envelope's face reads:
 "Mr. Herman Wolfe"
 R. 1. Box 22
 Gardon
 Tex""
 On the reverse side of the envelope, also in the same handwriting, there is written:
 "5 days return to"
 R. 1. Box 317
 Redwood City
 Calif""
 Postmarks and hand-stamped legends on the envelope indicate that it was mailed to its Texas addressee by registered mail on July 29, 1927.
 Respondent offered the letter for probate as the will of Ernest Wolfe, "a missing person," asserting that Herman Wolfe is Ernest's devisee under the will. Respondent acted--and still acts--on behalf of an adult child of Herman, who is now deceased. Appellant, one of several collateral heirs of Ernest, appeared below in opposition to the petition for probate. Her opposition was based upon the contentions, among others, that the letter was not a will because it did not reflect testamentary intent on Ernest's part and that it failed to meet the formal requirements of a holographic will. (Prob. Code, 53.)
 [1a] The appeal is from the probate court's order admitting the letter (with the envelope) to probate as Ernest's will. Appellant does not challenge the court's finding that the instrument was, in form, a valid holographic will. The sole question on the appeal is, as appellant states, "Whether the letter ... meets the requirement of testamentary intent."
 [2] Where a trial court's interpretation of a written instrument turns upon the credibility of conflicting extrinsic evidence admitted in aid thereof, we are bound by the interpretation reached. (Parsons v. Bristol Dev. Co. (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) We are free to make our own interpretation, however, if the trial court (1) *592 admitted no extrinsic evidence, (2) made its determination upon incompetent evidence, or (3) acted upon evidence which was not in conflict. (Parsons v. Bristol Dev. Co., supra, at pp. 865-866; Estate of Darms (1966) 247 Cal.App.2d 254, 257 [55 Cal.Rptr. 463].) Appellant states that "No evidence, either oral or documentary, was presented to the [probate] Court" when the petition for probate was heard. While this may be literally true, it is apparent that the court considered certain extrinsic facts in interpreting the letter to be Ernest Wolfe's will.
 Some of the extrinsic facts reached the probate court in the form of uncontroverted allegations in the parties' pleadings and briefs below: others had been adjudicated in a previous probate proceeding. None of the facts is disputed, and the evidence of none is in conflict. We are therefore free to make our own interpretation of the letter. [fn. 1] (Parsons v. Bristol Dev. Co., supra, 62 Cal.2d 861 at pp. 865-866; Estate of Darms, supra, 247 Cal.App.2d 254 at p. 257.) So doing, however, we must consider the extrinsic facts agreed upon below, because of their obvious relevance to the issue of Ernest's testamentary intent. Including them, the facts shown are as follows:
 [1b] On and before July 29, 1927, Ernest Wolfe was a resident of San Mateo County. He owned real property in Menlo Park. He was single and had no children, never having married. Herman Wolfe was Ernest's brother. Herman was alive on July 29, 1927, but has since died. On that date, Ernest wrote and mailed the above quoted letter to Herman. The letter was entirely written, dated and signed in Ernest's handwriting. On or about July 29, 1927, Ernest left his last place of residence, disappeared, and has not been seen or heard of since. In 1965, he was adjudicated to be a missing person within the meaning of chapter 2 of division 2a of the Probate Code (commencing with section 280). [fn. 2] *593
 [3] Our interpretation of the letter is guided by the following principles: an instrument may be admitted to probate as a will if it appears from the instrument's terms, viewed in the light of the circumstances of its execution, that it was executed with testamentary intent. (Estate of Sargavak (1950) 35 Cal.2d 93, 95-96 [216 P.2d 850, 21 A.L.R.2d 307]; Estate of French (1964) 225 Cal.App.2d 9, 15-16 [36 Cal.Rptr. 908]; 1 Page, Wills (3d ed.) 5.6, p. 172.) [4] The burden of proving the necessary element of testamentary intent rests upon the proponent of the alleged will. (Estate of Beebee (1953) 118 Cal.App.2d 851, 861 [258 P.2d 1101].)
 [5] The basic test of testamentary intent is not the testator's realization that he was making a will, but whether he intended by the document in question to create a revocable disposition of his property to take effect only upon his death. (Estate of Button (1930) 209 Cal. 325, 331 [287 P. 964]; Estate of Sargavak, supra, 35 Cal.2d at p. 95; Estate of Crick (1964) 230 Cal.App.2d 513, 516 [41 Cal.Rptr. 120].) Thus, a document written in the form of a letter, and which meets formal holographic requirements (as the letter before us does), will be admitted to probate if the requisite testamentary intent appears. (Estate of Button, supra, at pp. 332-333; Estate of Crick, supra; 1 Page, supra, 6.21, p. 276; Atkinson, Wills (2d ed.) 47, p. 207; Annotation, "Letter as a will or codicil," 40 A.L.R.2d 698.)
 [6] If testamentary intent adequately appears, a document's testamentary character is not affected by the fact that it includes nontestamentary matters (Estate of Button, supra, 209 Cal. at pp. 330-331; Estate of Sargavak, supra, 35 Cal.2d at p. 101; Estate of Schultz (1960) 54 Cal.2d 513, 516 (fn. 2) [6 Cal.Rptr. 281, 353 P.2d 921, 81 A.L.R.2d 1106.].) [7] No particular words are necessary to show testamentary intent. (Estate of Button, supra, at p. 331; Estate of French, supra, 225 Cal.App.2d at p. 15.) [8] When an instrument shows on its face--as in the case of the letter before us--that it was written by an inexperienced or illiterate person, it may be construed more liberally than if it had been drawn by an expert. (Estate of Lampkin (1962) 203 Cal.App.2d 374, 376 [21 Cal.Rptr. 513] [citing 1 Page, supra, 6.2, p. 228].)
 [1c] Under the foregoing rules and the known circumstances *594 in which Ernest Wolfe wrote the letter of July 29, 1927, we interpret it as his will. He wrote "[I] am leaveing my Place in Menlo Park for you[.]" The words "for you" sufficiently qualify "am leaveing" to demonstrate that Ernest intended the verb to effect a disposition of the "Place," and not to refer to his departure from it. Use of the word "leave" in a dispositive sense, although not conclusive (Brandt v. Brandt (1927) 85 Cal.App. 720, 729 [260 P. 342]), has been recognized as sufficient evidence of testamentary intent. (Mitchell v. Donohue (1893) 100 Cal. 202, 208-209 [34 P. 614, 38 Am.St.Rep. 279]; Estate of Silva (1915) 169 Cal. 116, 119 [145 P. 1015]. See Black's Law Dictionary (4th ed. 1951) p. 1036, "Leave" [4th par.]; Webster's New International Dictionary (3d ed. 1967) p. 1287, "Leave" (1a).)
 [9] Ernest also wrote "[I]f I never call for it ... the place is yours[.]" Had he made a "call for it" in later years, his previous testamentary disposition of the place would have been revoked. The question here is not whether a "call" for the property would have actually effected a revocation of the disposition made in 1927, but whether Ernest intended that result. The word "never" encompassed the reach of eternity, which included the inevitable event of Ernest's death. The passage quoted therefore imparted both (1) revocability and (2) posthumous effect as requisite elements of Ernest's testamentary intent.
 Ernest made the disposition in favor of his brother, with whom the letter itself showed him to have been on close and affectionate terms ("Lots of love to Brother Herman ..."). It does not appear that anyone else occupied a position superior to Herman as an object of Ernest's testamentary bounty, or that anyone would have held such position in the event of his intestacy. (Cf. Estate of Golder (1948) 31 Cal.2d 848, 852 [193 P.2d 465] [son's letter to his mother not interpreted as his will in her favor where such interpretation would have disinherited his spouse and child].)
 [10] We also note that Ernest, sending the letter by registered mail and admonishing Herman relative to its safekeeping ("[I]f I were you I would keep this letter"), thereby indicated his awareness of the letter's importance and character. Such perception, appearing from a similar admonition, has been recognized as evidence of testamentary intent in a written instrument. (Estate of Dexter (1918) 179 *595 Cal. 247, 248 [176 P. 168] [letter of transmittal stating "Keep all this enclosed"].)
 [11a] Appellant argues that the letter does not show testamentary intent on the writer's part because, telling Herman that "this leaves me OK," it indicates that Ernest was not in extremis. [12] Where a document or the circumstances of its execution have showed that its author was in extremis--in the sense of anticipating imminent death--the fact has been considered significant in the interpretation of the document as his will. (See cases reviewed, Estate of Spencer (1948) 87 Cal.App.2d 591, 595-597 [197 P.2d 351].) The absence of the same fact has contributed to an opposite conclusion (In re Richardson (1892) 94 Cal. 63, 65 [29 P. 484, 15 L.R.A. 635]; Estate of Kelleher (1927) 202 Cal. 124, 128 [259 P. 437, 54 A.L.R. 913]; Estate of Spencer, supra, at p. 597): but its absence is not decisive where the document in question shows testamentary intent apart from considerations of the testator's health. (See Estate of Crick, supra, 230 Cal.App.2d at p. 519.)
 [13] Moreover, the term "in extremis" is not exclusively applicable to an actor's anticipation of imminent death. It characterizes any situation in which the actor is "in extremity" (Black's Law Dictionary, supra, at p. 894) or in "extreme circumstances." (Webster's New International Dictionary, supra, at p. 1157.) [fn. 3] [11b] Ernest's letter stated that "I am flat broke except my place I ... have not got no job here yet so I am ... leaveing to hunt work ... not so good here for me ..." The situation depicted appears to have been one of "extreme circumstances" which found Ernest in extremis in an economic sense, although not anticipating imminent death. Other language in the letter ("I dont know where I am going ... do not write ... do not know when I will write again ... I never come back untell I get an nother Start") indicates sufficient uncertainty of the future to have motivated Ernest to make a testamentary disposition of his property.
 [14] Appellant further contends that Ernest, by the letter, intended only to convey to Herman a "current interest," or a "defeasible estate," in his property. The argument is based upon several passages in the letter, each of which--read *596 by itself--suggests that Ernest intended to vest in Herman only the right to collect rent ("[The place] ... is rented now $22.50 per month the rent is due on the 5th of each month but you might hafto give Elsie part to Colect it"); or to occupy the property ("[I]f you ever take a notion to come to Calif you will have a place to live in"); or to sell it ("PS if you want to sell the place in Menlo Park go ... head and sel it ... [etc.]").
 But Ernest's dire economic straits, narrated in the letter as cited above, suggest that he was not in a position--and therefore did not intend--to make a present conveyance of everything of value that he owned ("I am flat broke except my place"). Each of the isolated passages quoted appears to have been advisory rather than dispositive, and the advice given in each instance (relative to Herman's collecting rent, occupying the property, or selling it) was entirely consistent with Herman's ownership of the property as its devisee. Accordingly, appellant's contention of each such passage must yield to our overriding interpretation of the letter--reached from its full context and heretofore discussed--that Ernest intended to make a testamentary disposition, effective upon his death and not as of the letter's date.
 The order appealed from is affirmed.
 Devine, P. J., and Christian, J., concurred.
NOTES
[fn. 1] 1. Our interpretation of the letter includes the verbatim text quoted above which, due to the illegibility of the original, differs slightly from the typewritten version reproduced in the clerk's transcript on appeal. We obtained the original letter from the probate court and augmented the record on appeal to include it. (Rule 12(a), Cal. Rules of Court.) The differences mentioned do not affect our substantive interpretation of the letter.
[fn. 2] 2. This occurred in the previous probate proceeding heretofore mentioned. That proceeding was commenced by appellant, who alleged Ernest's intestacy and was appointed administratrix of the estate of Ernest Wolfe, a missing person. The other proceeding was called to the probate court's attention in this one, appellant having explicitly pleaded it in her opposition to respondent's petition for probate. The probate court's file in the other proceeding also established Ernest's residence, and his ownership of real property in Menlo Park, on and before the date of the letter and his disappearance. We judicially notice the contents of the file in the other proceeding. (Flores v. Arroyo (1961) 56 Cal.2d 492, 496 [15 Cal.Rptr. 87, 364 P.2d 263].)
[fn. 3] 3. Defining "in extremis," Black's, supra, notes that "In extremis does not always mean in articulo mortis. (Citation.)" Webster's, supra, alternatively defines the term as meaning "esp [i.e., not exclusively]: at the point of death."