[Civ. No. 34077. Second Dist., Div. One. Nov. 6, 1969.]

Estate of LOUISE GEFFENE, Deceased.
A. LOREN BOADT et al., Petitioners and Respondents, v.
WARREN PORTER, JR., et al., Objectors and Appellants.

## COUNSEL

Margolis & McTernan, John T. McTernan, Sol Scope and Barry Nakell for Objectors and Appellants.

Joseph Marchetti and Edward L. Lascher for Petitioner and Respondent Rowans.

No appearance for Petitioners and Respondents Boadt and Smythe.

## OPINION

**LILLIE, J.**—Two documents, both in the handwriting of decedent, were offered by respondents for probate. The first, dated March 1, 1967, was admitted:

"March 1, 1967

15333 De Pauw

Pacific Palisades, California

The following statement I have preferred not to announce:
The stock certificates owned by me I transfer to Marian T. Rowans—

That these stocks remain secure for her.

These stocks are, Federated Stores Inc. and Boston Fund Inc.

This request is not to be changed, revised or contested but left intacked [*sic*]. Respected due to my wishes.

Louise Geffene"

The second, dated June 25, 1967,[1] was denied probate on the ground that decedent did not intend the instrument to take effect as her will but as instructions for a will to be drawn and executed in the future. Contestants Porter and Gray (nephew and niece of decedent) appeal from that portion of the judgment admitting to probate the holographic instrument dated March 1, 1967.

Decedent, over 80 years of age, was a devout Christian Scientist and bedridden much of the time; she was cared for by Christian Science nurses of whom respondent Rowans was the last. Mrs. Rowans started working for decedent on December 29, 1966, on the day, then the night shift and finally from March 15, 1967, on 24-hour duty residing in decedent's home.

Respondent Boadt, a practicing attorney and former house counsel for Bullock's, had known decedent for many years. During early 1967, decedent's bank, fearful that she could no longer care for her own affairs, contacted the Winnett Foundation (organized to assist retired employees of Bullock's) which asked respondent Smythe, a social worker, to visit decedent. Mrs. Smythe discussed a conservatorship with decedent, who told her she wanted Mr. Boadt to act for her. Thus on February 21, 1967, Mr. Boadt received a request from the Winnett Foundation that he act as her conservator or guardian. He immediately communicated with appellant Porter (who in writing approved) and on March 7, 1967, visited decedent at which time she asked him to become her conservator. However, first she told him that she was a Christian Scientist and wanted to remain in her own home and under no circumstances would go to a hospital or see a doctor; he replied

[1]"1533 De Pauw
Pacific Palisades, Cal.

I, Louise Geffene—fully aware of my reason for setting forth these conclusions:

Never having drawn a will prior to this summary, after all my debts are paid and any cost due to illness, I desire that the following be carried out.

First I leave in the care of the Mother Church of Christ Scientist Boston Massachusetts $5,000 for the purpose of assisting new branch churches in their demonstration.

Second— Page 2

As a member of the thirty seventh church of Christ Scientist, Los Angeles, Pacific Palisades, California—I leave $5000.

Third—I leave my nephew, Warren Porter, Junior, of Davis, California $1000.

Fourth, I leave my neice [sic], Mrs. Robert Gray of El Cerito [sic], California, $1000.

Fifth, I leave to my friend and nurse, Marian T. Rowan [sic] to assist her in her work as a Christian Science nurse, my home and its furnishings the stock of Federated Stores and Boston Fund.

 Page 3

I ask that, A. Loren Boadt and Mrs. George Smythe act as executors of this will and paid according to their charges.

 Louise Geffene

Mr. Boadt, please draw this will up and send me a copy. Thank you."

that this was satisfactory and asked if she had the ability to pay for care in her home; she answered, "I think so." They discussed her property; during this conversation Mrs. Rowans was not present. Thereafter on April 17, 1967, Mr. Boadt was appointed conservator; the next day in looking through her papers he found no stock certificates which he knew Mrs. Geffene possessed.

Sometime between April 18, 1967, and June 23, 1967, when visiting decedent, Mr. Boadt asked decedent, who was then lying in bed, where the stock certificates were; Mrs Geffene reached under her mattress and pulled out two brown Manilla envelopes and handed them to him. He opened the envelopes and found therein the Federated Stores, Inc. (successor corporation of Bullock's, Inc.) and Putnam Fund stock certificates, counted them, then called in Mrs. Rowans and asked her to check and count for him, which she did. Mrs. Rowans did not then know what the certificates were. At no time did decedent say anything to Mr. Boadt or Mrs. Rowans about transferring any stock to Mrs. Rowans.

Around June 15, 1967, Mr. Boadt received a letter from Mr. Porter, decedent's nephew, expressing concern over whether she had made a will. The next day Mr. Boadt read the letter to Mrs. Geffene and inquired if she had drawn a will; she did not reply. When he told her he thought she should have a will, she told him she would think about it; she did not mention the instrument dated March 1, 1967. Mrs. Rowans was not present at this conversation.

On June 26, 1967, Mr. Boadt received in the mail the document dated June 25, 1967 (probate denied). The same evening while going through the files of the conservatorship he discovered the March 1, 1967, instrument in one of the brown Manilla envelopes decedent had taken from under her mattress and handed to him and which contained one of the sets of stock certificates mentioned in the document. On June 30, 1967, Mr. Boadt went to see decedent. He showed her both documents (March 1, 1967, and June 25, 1967) and asked her if she wrote them; she answered, "Yes." He told her he could not comply with her request to "draw this will up" contained in the June 25, 1967, document because it was incomplete, there being no provision for disposition of all of her property and no residuary clause. Mr. Boadt testified that he showed her both documents; "she read both of them and I pointed out to her that her disposition of the first one [March 1, 1967] was only partial and the second one [June 25, 1967] was only partial but she had added additional assets. The problem remained the same on both." He recommended she think about a more formal disposition and decedent asked, "What is the matter with these documents?"; he responded that they were incomplete. She then asked, "Is it legal?"; he told her that as a holographic document, in his opinion, it is

legal but that she had not disposed of everything, if that is what she wished; she then asked what would happen if she did nothing and he told her that the remainder of her estate would go to her heirs subject to administration expenses. She said, "I'll think about it."

On July 7, 1967, Mr. Boadt again raised the issue of the preparation of a will and asked if she had given it more thought; she answered, "Yes. Forget about it." He again discussed her failure to dispose of all of her estate and the lack of a residuary clause; she wanted reaffirmation of what he had told her on June 30, thus he again told her that the balance of her estate would go to her heirs. Then she asked, "Will that be the effect of these wills?" and he answered, "Yes"; she replied, "Then leave it. Forget it," which he understood to mean, "She wants to leave what she had, in effect, in her own handwriting what she wanted." Mrs. Rowans was not present at the time of this conversation. Decedent did not mention the subject again, and died September 27, 1967.

At the trial appellants claimed undue influence and that "the documents do not show testamentary intent on their face and there has been no showing that the documents were executed with the intent that they, in fact, were to have testamentary effect."[2] On these issues the trial court found that the holographic instrument of March 1, 1967, was an effective will; decedent dated and executed the same with the intent that it should be her last will; and it was not obtained through the influence of Mrs. Rowans or anyone else and Mrs. Rowans did not know the instrument existed until after decedent's death.

The sole issue before us is whether the holographic instrument of March 1, 1967, meets the requirement of testamentary intent. In claiming that it does not, appellants point to certain language therein as denoting a present transfer rather than a testamentary gift and to decedent's characterization of the document as a "statement." Further, they ask this court to make an independent interpretation of the evidence and find that the purpose of the March 1, 1967, document was simply "to secure [decedent's] ability to pay for nursing in her own home."

 Where the trial court's interpretation of a written instrument turns upon the credibility of conflicting extrinsic evidence admitted in aid thereof, we are bound by the interpretation reached by the court below (*Parsons* v. *Bristol Dev. Co.,* 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839]); however, this is not so if the trial court admitted no extrinsic

---

[2]Early in the trial Mr. Scope, counsel for appellants, an extremely thorough and competent lawyer, reminded the judge that among other things this was "the basis of the contest"; thus contrary to the representation of respondent Rowans herein, testamentary intent was an issue at trial.

evidence, made its determination upon incompetent evidence or acted upon evidence which was not in conflict. (*Pierpont Inn, Inc.* v. *State of California,* 70 Cal.2d 282, 294 [74 Cal.Rptr. 521, 449 P.2d 737]; *Estate of Russell,* 69 Cal.2d 200, 213 [70 Cal.Rptr. 561, 444 P.2d 353]; *Parsons* v. *Bristol Dev. Co.,* 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839]; *Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825]; *Estate of Darms,* 247 Cal.App.2d 254, 257 [55 Cal.Rptr. 463].) While here extrinsic evidence was admitted, it was uncontradicted (even though subject to conflicting inferences [see *Parsons* v. *Bristol Dev. Co.,* 62 Cal.2d 861, 866, fn. 2 (44 Cal.Rptr. 767, 402 P.2d 839)]), thus this court has the responsibility of independently determining whether the March 1, 1967, instrument was executed with testamentary intent. (*Parsons* v. *Bristol Dev. Co.,* 62 Cal.2d 861, 866 [44 Cal.Rptr. 767, 402 P.2d 839]; *Estate of Wolfe,* 260 Cal.App.2d 587, 591-592 [67 Cal.Rptr. 297]; *Estate of Kane,* 236 Cal. App.2d 51, 53 [45 Cal.Rptr. 742].)

■ Before an instrument may be admitted to probate as a will, it must appear from its terms, viewed in the light of the surrounding circumstances, that it was executed with testamentary intent. (*Estate of Sargavak,* 35 Cal.2d 93, 95-96 [216 P.2d 850, 21 A.L.R.2d 307]; *Estate of Golder,* 31 Cal.2d 848, 850 [193 P.2d 465]; *Estate of Wolfe,* 260 Cal.App.2d 587, 593 [67 Cal.Rptr. 297]; *Estate of French,* 225 Cal.App.2d 9, 15-16 [36 Cal.Rptr. 908].) ■ The basic test of testamentary intent is not the testator's realization that he was making a will, but whether he intended by the particular instrument offered for probate to create a revocable disposition of his property to take effect only upon his death. (*Estate of Sargavak,* 35 Cal.2d 93, 95 [216 P.2d 850, 21 A.L.R.2d 307]; *Estate of Button,* 209 Cal. 325, 331 [287 P. 964]; *Estate of Wolfe,* 260 Cal.App.2d 587, 593 [67 Cal.Rptr. 297]; *Estate of Crick,* 230 Cal.App.2d 513, 516 [41 Cal.Rptr. 120].) ■ No particular words are necessary to show testamentary intent but it must satisfactorily appear from the proffered document that the decedent intended by the very paper itself to make a disposition of his property after his death. (*Estate of Button,* 209 Cal. 325, 331 [287 P. 964]; *Estate of French,* 225 Cal.App.2d 9, 15 [36 Cal.Rptr. 908].) ■ If the prerequisite testamentary intent does not appear from the face of the instrument itself, reference may be made to the circumstances of its execution, and the language will be construed in the light of those circumstances. (*Estate of Spitzer,* 196 Cal. 301, 307 [237 P. 739]; *Estate of French,* 225 Cal.App.2d 9, 15 [36 Cal.Rptr. 908].)

■ Under the foregoing rules we are satisfied, as was the trial judge, that the instrument of March 1, 1967,. was executed by Mrs. Geffene with testamentary intent and is her will.

Mrs. Geffene herself drew the document in question without the advice of an expert; she was not an illiterate person having held a somewhat responsible position with Bullock's, neither was she experienced in drafting instruments or in the use of technical legal language. Her opening sentence, "The following statement I have preferred not to announce:" appears to be a layman's attempt to import formality not unlike the common usage of the opening phrase, "this is to certify." (*Estate of Kane*, 236 Cal.App.2d 51, 53 [45 Cal.Rptr. 742].) The sentence is entirely consistent with testamentary intent and would have been wholly unnecessary to effect present transfer of the stock to Mrs. Rowans upon execution of the instrument. Mrs. Geffene's use of the word "statement" instead of "will" to characterize the remainder of her writing is of little significance as are certain phrases appellants rely on in the June 25, 1967, document, to wit, "[n]ever having drawn a will prior to this summary," and "please draw this will up," for it is not necessary that a testator use the word "will" or that he actually realize that his document constitutes a will as a matter of law. (*Estate of Button*, 209 Cal. 325, 330-331 [287 P. 964]; *Estate of Spitzer*, 196 Cal. 301, 307 237 P. 739]; *Estate of Gutierrez*, 189 Cal.App.2d 165, 169 [11 Cal.Rptr. 51].)

In the second sentence of the document "The stock certificates owned by me I transfer to Marian T. Rowans—" Mrs. Geffene employed the verb "transfer" in the present tense, but similar is "I give" which has been held appropriate to testamentary disposition. (*Estate of Button*, 209 Cal. 325, 332 [287 P. 964]; *Estate of Kane*, 236 Cal.App.2d 51, 53 [45 Cal.Rptr. 742].) While "transfer" is usually used to convey a present interest in property, in its context here considered in the light of the circumstances, it seems more the language of a will than of the conveyance of a present interest. (*Estate of Beffa*, 54 Cal.App. 186, 189-190 [201 P. 616].) "It is common knowledge that wills usually employ verbs in the present tense." (*Estate of French*, 225 Cal.App.2d 9, 18 [36 Cal.Rptr. 908].) Further, a present desire to transfer is negated by failure of Mrs. Geffene to deliver the document to Mrs. Rowans or even to mention it to her. Testamentary intent is indicated by decedent's careful retention of the document in an envelope hidden under her mattress and its later delivery by her not to Mrs. Rowans but to Mr. Boadt, her conservator. This indicates that the effective date was intended to be upon Mrs. Geffene's death. (*Estate of Kane*, 236 Cal.App. 2d 51, 53 [45 Cal.Rptr. 742]; *Estate of Beffa*, 54 Cal.App. 186, 190 [201 P. 616].) Mrs. Geffene not only never gave the document to Mrs. Rowans but it is undisputed that prior to decedent's death Mrs. Rowans did not know of its existence. That Mrs. Geffene gave it to Mr. Boadt, her conservator, also demonstrates her awareness of the document's importance and its character. Moreover, as observed by the trial judge, decedent having owned Bullock's stock and surrendered the certificates for stock in

the successor corporation, Federated Stores, Inc., the inference is proper that she would have known that title to the stock would not pass to Mrs. Rowans by delivery of the document to Mr. Boadt without instructions of some kind, and no instructions are needed for a bequest. Too, she would have known she could not transfer by the one instrument certificates in two different companies, Federated Stores, Inc. and Putnam Fund.

The third phrase, "That these stocks remain secure for her," further indicates that title to the stocks was not intended to pass at the time of execution of the document but at a future date when decedent would no longer be alive to insure that Mrs. Rowans would receive them. Had a present transfer been intended there would have been no necessity for the provision that the stocks "remain secure for her." Further, the closing paragraph, "This request is not to be changed, revised or contested but left intacked [*sic*]. Respected due to my wishes," employs terms indicative of testamentary intent; it is improbable that Mrs. Geffene would have used "request," "Respected" and "my wishes" had she intended a present transfer. Too, it is unlikely she would have characterized a present transfer as "This request," or directed that it "not be changed" or "contested" but "Respected," for surely she would not have thought that a present transfer could be changed or revised; nor is it inappropriate to infer from the use of "contested," a term commonly associated with testamentary documents, that Mrs. Geffene wrote in terms of a will, not a gift. The closing paragraph has the sound of a directive to the person who would ultimately be in charge of her affairs upon her death (while on March 1, 1967, Mr. Boadt had not yet been appointed conservator, Mrs. Geffene nevertheless knew that he was going to act on her behalf) and to her heirs, and demonstrates that she was projecting to the future carrying out of her "wishes."

At age 80, under the circumstances here, decedent's contemplation of death is reasonably inferable (*Estate of Kane,* 236 Cal.App.2d 51, 53 [45 Cal.Rptr. 742]); this is also significant in the interpretation of the document as her will. (*Estate of Spencer,* 87 Cal.App.2d 591, 595-597 [197 P.2d 351].) However, the absence of anticipation of imminent death is not decisive where the document shows testamentary intent apart from considerations of the testator's health. (*Estate of Wolfe,* 260 Cal.App.2d 587, 595 [67 Cal.Rptr. 297]; *Estate of Crick,* 230 Cal.App.2d 513, 519 [41 Cal.Rptr. 120].) Mrs. Geffene, 80 years or older, was overweight and ill, and after a fall in February 1967, bedridden. She was beset with complications from the fall, congestion of the lungs and other ills. She had never been to a doctor and we have no way of knowing whether she knew of the seriousness of her condition; in any event, she died seven months later.

While the document makes no reference to her entire estate, Mrs.

Geffene had the right to make a will which does not dispose of all of her property but which leaves the residue to her heirs under the law of succession. (*Estate of Gundelach,* 263 Cal.App.2d 825, 830 [70 Cal.Rptr. 140]; *Estate of Swallow,* 211 Cal.App.2d 359, 365 [27 Cal.Rptr. 235]; *Estate of Klewer,* 124 Cal.App.2d 219, 223 [268 P.2d 544, 41 A.L.R.2d 941].) This is exactly what she thought she was doing when she permitted the March 1, 1967, instrument to stand as her will.

Appellants claim in their closing brief that the evidence is clear that when decedent considered making a will she asked an attorney to draw it. At no time did Mrs. Geffene of her own volition ask Mr. Boadt to draw up a will. At all times it was Mr. Boadt, originally prodded by appellant Porter, who brought up the subject; Mrs. Geffene never voluntarily asked Mr. Boadt or anyone else about a will and at all times was reluctant to even discuss a more formal disposition of her property. Finally, as a result of Mr. Boadt's June 16, 1967, discussion with her she wrote the June 25, 1967, document asking him to draw up a formal will. She appears to have been one who seldom discussed her business affairs, was determined and opinionated and obviously did not care to discuss a formal disposition of her property predicated on death. Contrary to the representation of appellants, Mrs. Geffene never orally stated to Mr. Boadt she had no will—the first time he asked her if she had a will (June 16, 1967) she simply remained silent; the second time (June 30, 1967) she wanted to rely upon "*these* documents" which she had executed March 1, 1967, and June 25, 1967; the third time (July 7, 1967) she asked the "effect of *these wills*" and Mr. Boadt told her. The subject was never mentioned again. Nor in the light of Mr. Boadt's testimony we cannot accept appellants' interpretation of the evidence to be that Mrs. Geffene asked only if the June 25, 1967, document was "legal" and Mr. Boadt answered that it was, and that she never asked and he never advised her, concerning the March 1, 1967, document. Obviously "these documents" and "these wills" did not refer to the single document of June 25, 1967, but to both instruments written by decedent.

Significant is decedent's own declaration of testamentary intent. After Mrs. Geffene was convinced, following discussions with the advice from Mr. Boadt, that her manner of disposing of her property upon her death by "these documents" and "these wills" was "legal" and would have the effect of passing the residuum to her heirs, she insisted more than once (over the advice of Mr. Boadt that a more complete will would be more satisfactory) that she wanted to leave the situation as it was and rely upon the March 1 and June 25 instruments; thereafter she had no more interest in executing another will. ■ A declaration by a decedent concerning an instrument already executed may show testamentary intent. Declarations of a testator "whether made at, before, or after the execution of the instrument

are admissible, if offered for the purpose of ascertaining the intent with which the instrument was executed [citations] . . . ." *(Estate of Sargavak,* 35 Cal.2d 93, 97 [216 P.2d 850, 21 A.L.R.2d 307]; *Estate of Crick,* 230 CalApp.2d 513, 519 [41 Cal.Rptr. 120]; *Estate of French,* 225 Cal.App. 2d 9, 16 [36 Cal.Rptr. 908]; *Estate of Lampkin,* 230 Cal.App.2d 374, 376 [21 Cal.Rptr. 513].) The natural and only reasonable meaning of Mrs. Geffene's statement, "Forget about it" is not "forget about having a will" as urged by appellants but, considered in the context of her three discussions with Mr. Boadt, "forget about drawing a more complete formal testamentary disposition." Even though, after Mr. Boadt's advice on June 16, 1967, Mrs. Geffene did in her June 25, 1967, document ask him to draw up a will, the existing holographic instrument drawn by her with testamentary intent on March 1, 1967, is nonetheless subject to probate. *(Estate of Crick,* 230 Cal.App.2d 513, 517 [41 Cal.Rptr. 120].)

Nor can we accept appellants' interpretation of the evidence that the March 1, 1967, instrument was simply one to secure the services of Mrs. Rowans to take care of decedent. Without doubt Mrs. Geffene was fond of and grateful to Mrs. Rowans but she had no difficulty in obtaining Christian Science nurses all of whom apparently became devoted to her (Mrs. Hartman, Mrs. Rangel and several temporary nurses). Nor did her finances seem to give her much concern. Mrs. Rangel said she mentioned she had no money, but when Mr. Boadt, who was to become her conservator, seriously discussed her assets with her, she said she thought she could afford to stay in her own home. Mrs. Geffene knew she had considerable assets—cash, savings bonds, stock and real estate, and that Mr. Boadt would take care of her affairs.

The judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.